1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BNSF RAILWAY COMPANY,

Plaintiff,

v.

CLARK COUNTY, WASHINGTON;
MITCH NICKOLDS, in his official capacity
as Director of Community Development of
Clark County; KEVIN A. PRIDEMORE, in
his official capacity as Code Enforcement
Coordinator of Clark County; and
RICHARD DAVIAU, in his official
capacity as County Planner of Clark County,

Defendants.

No.: 3:18-cv-5926

**PLAINTIFF BNSF RAILWAY
COMPANY'S MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

Note on Motion Calendar:
November 14, 2018

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF CONTENTS

**Page**

I.     NOTICE OF MOTION ................................................................................................ 1

II.    INTRODUCTION ...................................................................................................... 1

III.   STATEMENT OF FACTS ........................................................................................ 2

     A.     Statutory and Regulatory Background.......................................................... 2

         1.     Federal Railroad Regulation under the ICC Termination Act ...................... 2

         2.     County Regulation of the Columbia River Gorge National Scenic Area................................................................................................................ 4

     B.     BNSF's Interstate Rail Operations............................................................... 5

     C.     BNSF's Railroad Construction Project in Clark County .............................. 6

     D.     Defendants' Efforts to Impose the Permit Process ...................................... 7

IV.    ISSUE STATEMENT ................................................................................................ 8

V.     ARGUMENT AND AUTHORITY ........................................................................... 8

     A.     Standard of Review...................................................................................... 8

     B.     BNSF Is Highly Likely to Succeed on the Merits of Its Preemption Claim.............. 9

         1.     The Construction Project Falls Within the Federal Surface Transportation Board's Statutory Grant of Jurisdiction.............................. 9

         2.     The ICC Termination Act Preempts Application of the County Development Code to the Construction Project.......................................... 11

         3.     The County Development Code Is a Local Law Properly Subject to ICCTA Preemption .................................................................................. 12

     C.     A Temporary Restraining Order and Preliminary Injunction Are Warranted.................................................................................................... 20

     D.     The Court Should Not Require a Bond as a Condition of the TRO ....................... 23

VI.    CONCLUSION ....................................................................................................... 24

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## TABLE OF AUTHORITIES

FEDERAL CASES                                                              Page(s)

*Alabama v. North Carolina*, 560 U.S. 330 (2010)........................................................20

*Am. Trucking Ass'ns, Inc. v. City of L.A.*,
    No. 08-4920, 2010 WL 4313973 (C.D. Cal. Oct. 25, 2010)..................................22

*Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046 (9th Cir. 2009)..............22, 23

*Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*,
    622 F.3d 1094 (9th Cir. 2010) ....................................................................3, 16, 19

*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19 (D.C. Cir. 2016)..........17

*Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168 (D. Colo. 2001)...........23

*BNSF Ry. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755 (9th Cir. 2018) ...............3

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009),
    *vacated on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal.,
    Inc.*, 565 U.S. 606 (2012)....................................................................................23

*Cent. Valley Chrysler-Plymouth v. Cal. Air Res. Bd.*,
    No. CV-F-02-5017, 2002 WL 34499459 (E.D. Cal. June 11, 2002).....................22

*City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998) .....................2, 3, 11

*Clark v. Martinez*, 543 U.S. 371 (2005) .......................................................................17

*Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011) ...........................................................23

*DHX, Inc. v. STB*, 501 F.3d 1080 (9th Cir. 2007)...........................................................3

*Edmond v. United States*, 520 U.S. 651 (1997) ...........................................................17

*ET Trading, Ltd. v. ClearPlex Direct, LLC*,
    No. 15-CV-426-LHK, 2015 WL 913911 (N.D. Cal. Mar. 2, 2015).........................8

*Fincher v. Fla. Dep't of Labor & Emp't Sec.—Unemployment Appeals Comm'n*,
    798 F.2d 1371 (11th Cir. 1986) ..........................................................................14

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ....................................................8

*Green Mountain R.R. v. Vermont*, 404 F.3d 638 (2d Cir. 2005)...........................11, 21, 22

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) ...............................15, 18

*Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015)..................22

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003)..................................................24

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
    440 U.S. 391 (1979)...................................................................................14, 15

*Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*,
    24 F. Supp. 2d 1062 (E.D. Cal. 1998)...................................................................19

*L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004 (9th Cir. 1981) ........................8

*Mut. Ins. Co. of Am. v. Royal Appliance Mfg. Co.*,
    112 F. App'x 386 (6th Cir. 2004) .........................................................................16

*Or. Coast Scenic R.R. v. Oregon Dep't of State Lands*,
    841 F.3d 1069 (9th Cir. 2016) ..................................................................... *passim*

*Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Department of
Environmental Management*, 585 F.3d 42 (1st Cir. 2009) ......................................19

*Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning
Council*, 786 F.2d 1359 (9th Cir. 1986)...........................................................13, 15

*Stephans v. Tahoe Reg'l Planning Agency*, 697 F. Supp. 1149 (D. Nev. 1988)............19

*Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614 (2013)......................................15

*Transit Comm'n v. United States*, 289 U.S. 121 (1933) .................................................2

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................8, 20


**STATE CASES**

*Friends of the Columbia Gorge v. Columbia River Gorge Comm'n*,
    346 Or. 366 (2009)................................................................................................20

*Friends of the Eel River v. N. Coast R.R. Auth.*,
    399 P.3d 37 (Cal. 2017) .......................................................................................11

*Tucker v. Columbia River Gorge Comm'n*,
    73 Wash. App. 74 (1994)................................................................................14, 18

MOTION FOR TRO AND PRELIMINARY INJUNCTION    iii
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**FEDERAL REGULATORY DECISIONS**

*14500 Ltd. LLC—Pet. for Declaratory Order,*
    FD 35788, 2014 WL 2608812 (STB June 4, 2014) ..............................................3

*DesertXpress Enters., LLC—Pet. for Declaratory Order,*
    FD 34914, 2007 WL 1833521 (STB June 25, 2007) .......................................12, 21

*DesertXpress Enters., LLC*, FD 34914, 2010 WL 1822102 (STB May 6, 2010) ........................10

*Soo Line R.R. Co.—Pet. for Declaratory Order,*
    FD 35850, 2014 WL 7330097 (STB Dec. 22, 2014) ...........................................21

*Washington & Idaho R.R.—Pet. for Declaratory Order,*
    FD 36017, 2017 WL 1037370 (STB Mar. 15, 2017) ...........................................11

**STATE REGULATORY DECISION**

*Union Pac. R.R. v. Wasco Cty. Bd. of Comm'rs,*
    CRGC NO. COA-16-01 (Sept. 8, 2017) .............................................13, 18, 19, 20

**FEDERAL CONSTITUTION AND STATUTES**

U.S. Const. Article I, § 10, cl. 3 ...........................................................4, 15

U.S. Const. Article II, § 2, cl. 2 ...............................................................14

Columbia River Gorge National Scenic Area Act, Pub. L. No. 99-663, 100 Stat.
    4274 (1986), 16 U.S.C. §§ 544–544p ......................................................4

    16 U.S.C. § 544b(a)(2) ...................................................................4

    16 U.S.C. § 544c(a)(1)(A) ............................................................4, 13

    16 U.S.C. § 544c(a)(1)(B) ................................................................4

    16 U.S.C. § 544c(a)(1)(C) .............................................................4, 14

    16 U.S.C. § 544c(a)(1)(C)(iv) .........................................................14

    16 U.S.C. § 544c(a) ......................................................................4

    16 U.S.C. § 544d .........................................................................4

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

16 U.S.C. § 544d(c) ...................................................................................................15

16 U.S.C. § 544d(f) ...................................................................................................16

16 U.S.C. § 544d(f)(3)(B) .........................................................................................16

16 U.S.C. § 544e(b) ..............................................................................................4, 18

16 U.S.C. § 544h(b)(1) .............................................................................................17

16 U.S.C. § 544m(b)(4)–(5) .....................................................................................16

16 U.S.C. § 544m(b)(4) .......................................................................................16, 18

16 U.S.C. § 544m(b)(6) .......................................................................................16, 18

16 U.S.C. 544*o*(d) .....................................................................................................4

ICC Termination Act of 1995, Pub. L. 104-88, 109 Stat. 803 ............................ *passim*

49 U.S.C. § 10102(5) ................................................................................................10

49 U.S.C. § 10102(9) ............................................................................................3, 10

49 U.S.C. § 10501(a) ............................................................................................9, 11

49 U.S.C. § 10501(a)(2) ...........................................................................................10

49 U.S.C. § 10501(a)(2)(A) ......................................................................................10

49 U.S.C. § 10501(b) ......................................................................................3, 11, 21

Transportation Act of 1920, 41 Stat. 484 ...................................................................2

42 U.S.C. § 1983 ......................................................................................................15


**STATE AND LOCAL STATUTES**

Clark County Code Chapter 40.240 ............................................................................5

Clark County Code § 40.100.050 ...............................................................................5

Clark County Code § 40.100.060 ...............................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Clark County Code § 40.240.040 .................................................................5

Clark County Code § 40.240.010.B .............................................................5

Columbia River Gorge Compact, ORS § 190.150, RCW § 43.97.015................................ *passim*

    Article I ...........................................................................13

    Article I.a ...............................................................4, 13, 14, 18

    Article I.a.2 ..................................................................4

    Article II .....................................................................4

    Article II.a ..................................................................14

    Article III ...................................................................13

    Article IV ...................................................................14

ORS § 196.150.......................................................................4

ORS § 215.050.......................................................................18

RCW § 36.70A.040...................................................................18


**FEDERAL RULES**

Fed. R. Civ. P. 65(a)(2)..............................................................24

Fed. R. Civ. P. 65(c) ...............................................................23

W.D. Wash. LCR 65(b)(1).............................................................24


**FEDERAL REGULATION**

49 C.F.R. § 1201.1-1.................................................................5

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## TABLE OF AUTHORITIES
### (continued)

Page(s)

OTHER AUTHORITY

22 Weekly Comp. Pres. Docs. 1576 (Nov. 17, 1986)..........................................................14, 15, 17

Gen. Accounting Office, *Principles of Federal Appropriations Law* (4th rev. ed.
  2016) ..............................................................................................................................................14

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    NOTICE OF MOTION

Please take notice that on November 14, 2018, Plaintiff BNSF Railway Company will note for hearing this motion for a temporary restraining order against Defendants to prevent imminent enforcement against BNSF of Clark County land use ordinances that are preempted by federal law.  BNSF will also ask that a hearing on its motion for a preliminary injunction be set by order of this Court, following a ruling on the motion for a temporary restraining order.

## II.    INTRODUCTION

Against clear Ninth Circuit precedent, Clark County officials are threatening to force Plaintiff to comply with the procedural and substantive requirements of a county land use law— the County Development Code—against a railroad construction project undertaken by Plaintiff BNSF Railway Company ("BNSF").  Federal rail law preempts those requirements, vesting such matters exclusively in the federal government.  At issue here is BNSF's upgrade to a stretch of track between Washougal and Mt. Pleasant in Clark County, which will allow smoother, continuous movement of trains and reduce wait times at road crossings and stopped trains throughout the region, including within Clark County.

As a common carrier by rail, BNSF is not required to undertake the process to obtain state, county, or other local permits for rail construction and operations projects like this Washougal to Mount Pleasant, Washington Double Track Construction Project ("Construction Project").  Federal law expressly preempts processes under which state and local governments purport to exercise oversight of such matters.  Nor is BNSF subject to the substantive requirements of state, county, and local land use laws with respect to construction of its railroad. Nevertheless, Clark County and the officials who administer and enforce the County Development Code ("Defendants") insist that BNSF must apply for and obtain a certain county permit before continuing construction.  Defendants and their agents have now repeatedly threatened to compel BNSF to expend resources on a preempted permitting process, which raises the prospect of forcing BNSF to stop construction work on part of its interstate rail network and

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   face unknown delays while that misconceived process grinds on.

2   　　　Both the enforcement proceedings themselves and the substantive restrictions Defendants

3   might ultimately impose on the Construction Project strike at the heart of Congress's plan for

4   uniform federal regulation of rail carriers and their facilities.  Clark County officials have no

5   more power to superintend, delay, or stymie railroad construction than do officials in any of the

6   countless other local jurisdictions across the nation that host parts of the interstate rail network.

7   Because Defendants refuse to heed federal law, and imminently threaten to take action

8   inconsistent with it, BNSF asks that they be temporarily restrained from taking any action to

9   compel BNSF to enter into the County Development Code permitting process relating to the

10   Construction Project, and that this Court's temporary restraining order be converted to a

11   preliminary injunction after full briefing and hearing.

12   **III.**　　**STATEMENT OF FACTS**

13   　　　**A.**　　**Statutory and Regulatory Background**

14   　　　　　**1.  Federal Railroad Regulation under the ICC Termination Act**

15   　　　Since the Transportation Act of 1920, 41 Stat. 484, Congress has recognized the need for

16   unified and exclusive federal administrative regulation of common carriers by rail.  Prior to that

17   time, "regulations . . . by federal and state authorities were frequently conflicting, and often the

18   enforcement of state measures interfered with, burdened, and destroyed interstate commerce.

19   Multiple control . . . of matters affecting [interstate rail] transportation had been found

20   detrimental to the public interest as well as to the carriers.  Dominant federal action was

21   imperatively called for."  *Transit Comm'n v. United States*, 289 U.S. 121, 127 (1933).  Federal

22   law continues to guard against the threat of Balkanization of the national rail network by local

23   regulations, and today, the federal government regulates railroad construction and operations

24   under the ICC Termination Act of 1995, Pub. L. 104-88, 109 Stat. 803 ("ICCTA").  ICCTA

25   grants the federal Surface Transportation Board ("STB") exclusive authority to regulate

26   numerous aspects of rail facilities and operations.  *City of Auburn v. United States*, 154 F.3d

MOTION FOR TRO AND PRELIMINARY INJUNCTION   2
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  1025, 1029 (9th Cir. 1998).  The statute vesting exclusive jurisdiction in the STB also contains

2  an express preemption clause:

3       The Jurisdiction of the [STB] over—

4       (1) the transportation by rail carriers . . . ; and

5       (2) the construction, acquisition, operation, abandonment, or discontinuance of spur,
         industrial, team, switching, or side tracks, or facilities

6
7       is exclusive.  Except as otherwise provided in [ICCTA's rail provisions], the remedies
         provided under [ICCTA] with respect to regulation of rail transportation are exclusive
         and preempt the remedies provided under Federal or State law.

8
9  49 U.S.C. § 10501(b).  " '[T]ransportation' includes . . . [any] yard, property, facility,

10 instrumentality, or equipment of any kind related to the movement of passengers or property, or

11 both, by rail."  49 U.S.C. § 10102(9).  Because the STB's jurisdiction is exclusive, States and

12 local governments are categorically forbidden from regulating in these areas.  *City of Auburn*,

13 154 F.3d at 1029–31.  " 'It is difficult to imagine a broader statement of Congress's intent to

14 preempt state regulatory authority over railroad operations.' "  *Id.* at 1030.

15       Accordingly, as the STB has explained:  "Section 10501(b) preemption . . . categorically

16 prevent[s] states or localities from intruding into matters that are directly regulated by the Board

17 (e.g., railroad rates, services, construction, and abandonment).  It also prevents states or localities

18 from imposing requirements that, by their nature, could be used to deny a railroad's ability to

19 conduct rail operations or proceed with activities that the Board has authorized, such as a

20 construction or abandonment.  Thus, state or local permitting or preclearance requirements,

21 including building permits, zoning ordinances, and environmental and land use permitting

22 requirements, are categorically preempted."  *14500 Ltd. LLC—Pet. for Declaratory Order*, FD

23 35788, 2014 WL 2608812, at *4 (STB June 4, 2014) (citing *City of Auburn*, 154 F.3d at 1029–

24 31).  This Court "owe[s] *Chevron* deference to the STB's 'guidance on the scope of ICCTA

25 preemption.'"  *BNSF Ry. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 762 (9th Cir. 2018)

26 (quoting *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1096 (9th

   Cir. 2010), quoting in turn *DHX, Inc. v. STB*, 501 F.3d 1080, 1086 (9th Cir. 2007)).

### 2.   County Regulation of the Columbia River Gorge National Scenic Area

In order to facilitate cooperative regional administration of the Columbia River Gorge, the States of Washington and Oregon have entered into a bi-state compact known as the Columbia River Gorge Compact, codified at RCW § 43.97.015 and ORS § 196.150 (the "Gorge Compact"), covering an area in the vicinity of the Columbia River known as the "Scenic Area," *see* 16 U.S.C. § 544b(a)(2).  The Constitution's Compact Clause requires that Congress consent to interstate compacts, U.S. Const. Art. I, § 10, cl. 3, an action that it performs by enacting a statute.  Here, Congress gave advance consent to the Gorge Compact in the Columbia River Gorge National Scenic Area Act, Pub. L. No. 99-663, 100 Stat. 4274 (1986), codified at 16 U.S.C. §§ 544–544p (the "Gorge Act"); *see* 16 U.S.C. §§ 544c(a), 544*o*(d) (Congress's consent).

Congress provided that its consent was conditional on the inclusion of several provisions in the Gorge Compact.  16 U.S.C. §§ 544c(a), 544*o*(d).  As relevant here, *first*, the Gorge Compact establishes a Columbia River Gorge Commission ("Commission") under state law, Gorge Compact Art. I.a, which "shall not be considered an agency or instrumentality of the United States for the purpose of any federal law," 16 U.S.C. § 544c(a)(1)(A).  *Second*, under Gorge Compact Article I.a, "the States of Oregon and Washington . . . provide to the Commission, and the counties [including Clark County] under State law the authority to carry out their respective functions and responsibilities," 16 U.S.C. § 544c(a)(1)(B).  *Third*, Oregon, Washington, and counties in the Scenic Area appoint the voting members of the Commission according to the criteria set forth in the Gorge Compact.  Gorge Compact Art. II; *see* 16 U.S.C. § 544c(a)(1)(C).  *Fourth*, the Commission adopts a management plan for the Scenic Area, *see* 16 U.S.C. § 544d, and each county in the Scenic Area (including Clark County) in turn "adopt[s] a land use ordinance consistent with the management plan," subject to the Commission's approval, *see* Gorge Compact Art. I.a.2; 16 U.S.C. § 544e(b).

Oregon and Washington adopted as state law the conditions on which Congress conditioned its consent.  *See* Gorge Compact Art. I.a (giving the Commission "the power and

MOTION FOR TRO AND PRELIMINARY INJUNCTION   4
USDC Case No. 3:18-cv-5926

1  authority to perform all functions and responsibilities in accordance with the provisions of this

2  compact and of the Columbia River Gorge National Scenic Area Act (the federal Act), which is

3  incorporated by this specific reference in this agreement").  In turn, because portions of Clark

4  County are located within the Scenic Area, Clark County has enacted land use ordinances for the

5  Scenic Area as part of the County Development Code.  *See* Clark County Code Chapter 40.240.

6  In particular, Chapter 40.240 establishes an administrative permitting and preclearance process

7  for land use within the Scenic Area.  "No building, structure or land shall be used and no

8  building or structure shall be . . . erected, altered or enlarged . . . in the Clark County portion of

9  the Columbia River Gorge National Scenic Area except for the uses listed in this chapter, when

10  considered under the applicable procedural and substantive guidelines of this chapter."  Clark

11  County Code § 40.240.010.B.

12       The County Development Code enacted by Clark County lawmakers is administered by

13  Clark County officials.  In particular, as relevant here, Defendant Mitch Nickolds is the Director

14  of the Clark County Community Development Department; he is the "Responsible Official" who

15  interprets, applies, and enforces the provisions of the County Development Code.  *See* Clark

16  County Code § 40.100.050, § 40.100.060, § 40.240.040 *s.v.* "Responsible Official."  Defendants

17  Kevin Pridemore and Richard Daviau are Defendant Nickolds' designees for certain enforcement

18  matters, including those threatened against BNSF.

19      **B.**   **BNSF's Interstate Rail Operations**

20       BNSF operates one of the largest freight railroad networks in North America, and is one

21  of seven North American Class I railroads, defined as "having annual carrier operating revenues

22  of $250 million or more."  49 C.F.R. § 1201.1-1; Declaration of Dava Kaitala ("Kaitala Decl."),

23  ¶ 3.  BNSF serves 28 States in the western two-thirds of the United States, as well as portions of

24  Canada and key Mexican gateways, with approximately 32,500 route miles.  Kaitala Decl., ¶ 3.

25  BNSF operates three transcontinental routes, over which it moves an average of 1,600 trains per

26  day and carries more than 500 million tons of freight per year.  *Id.*

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   BNSF is one of the nation's top transporters of consumer and industrial goods, including

2   grain and other agricultural products, low-sulfur coal, petroleum and chemicals, food, and

3   housing materials.  Kaitala Decl., ¶ 4.  BNSF's shipments help feed and clothe persons across the

4   country, and supply and power American homes and businesses every day.  *Id.*  BNSF also helps

5   connect local business with the global supply chain, which is especially critical in Washington

6   State where 40 percent of all jobs are tied to trade.  *Id.*  Interstate rail is critical to moving our

7   nation's freight in an efficient and environmentally-friendly manner.  *Id.*  Any interruption to rail

8   service along BNSF's tracks would hamper and interfere with interstate commerce.  *Id.*

9   **C.      BNSF's Railroad Construction Project in Clark County**

10   Over the past five years, BNSF has invested approximately $940 million to expand,

11   upgrade and maintain its network in Washington State.  Kaitala Decl., ¶ 5.  In 2018 alone, BNSF

12   will expend approximately $160 million in capital expenditures in Washington State, which will

13   help keep BNSF's interstate network in optimal condition.  *Id.*  BNSF's maintenance program in

14   Washington State for 2018 includes approximately 490 miles of track surfacing, undercutting

15   work, or both, as well as replacing approximately 40 miles of rail and 230,000 rail ties.  *Id.*

16   As part of its work in Washington State, BNSF is upgrading its track between

17   Washougal, Washington and Mt. Pleasant, Washington.  Kaitala Decl., ¶ 6.  The relevant track is

18   on a right-of-way in Clark County within the Scenic Area, on land that BNSF owns in fee

19   simple.  *Id.*  As described in a Determination of Non-Significance by the Washington

20   Department of Ecology, the Construction Project consists of an upgrade to an existing BNSF

21   mainline track and construction of a second mainline track adjacent to and south of the existing

22   mainline track for approximately 2.56 miles.  Kaitala Decl., Ex. A at 1.  BNSF is also upgrading

23   a mainline track turnout and constructing about 800 feet of additional track.  *Id.*  There will be a

24   total of about 10 acres of ground disturbance.  *Id.*  Construction work will occur within the

25   existing BNSF right-of-way.  *Id.* at 1–2. The additional railroad track will connect existing

26   sidings for double-track operations, which in turn will allow smoother, continuous movement of

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    trains and reduce wait times at road crossings and stopped trains throughout the region.  *Id*. at 2.

2         **D.      Defendants' Efforts to Impose the Permit Process**

3         On September 4, 2018, James Lynch, counsel for BNSF in this action, received an email

4    from Defendant Daviau in which he asserted that a Columbia River Gorge National Scenic Area

5    permit from Clark County is required for the Construction Project.  Declaration of James M.

6    Lynch ("Lynch Decl."), ¶ 2; Lynch Decl., Ex. A.  After receiving this email, Mr. Lynch

7    responded first by telephone to Defendant Daviau and then by email to Defendants Daviau and

8    Pridemore and asserted BNSF's position that federal law preempts the Clark County regulations

9    pertaining to the Columbia River Gorge National Scenic Area.  Lynch Decl., ¶¶ 2–3; Lynch

10   Decl., Ex B.

11        On September 20, 2018, Mr. Lynch received another letter, this time from Defendant

12   Pridemore, notifying BNSF that it was "required to submit the Columbia River Gorge National

13   Scenic Area permit application within thirty days."  Lynch Decl., ¶ 4; Lynch Decl., Ex. C.  After

14   receiving this letter, Mr.  Lynch requested a meeting with Defendant Daviau to continue to

15   discuss this issue, but Defendant Daviau declined this request and stated that if BNSF did not

16   intend to submit a permit application "the best course of action is to move forward with [a] Code

17   Enforcement Notice of Order and hearing."  Lynch Decl., ¶ 5; Lynch Decl., Ex. D.

18        On October 19, 2018, Mr. Lynch had a telephone conversation with Taylor Hallvik,

19   Deputy Prosecuting Attorney for Clark County, about the Construction Project.  During this

20   conversation, Mr. Lynch again asserted BNSF's position that federal law preempts the

21   application to the Construction Project of the Clark County regulations at issue.  Lynch Decl. ¶ 6.

22   During this call, Mr. Hallvik requested that BNSF provide him with a letter by November 2,

23   2018, outlining BNSF's legal position on the matter.  On October 25, 2018, before the deadline

24   for the requested letter, Mr. Lynch received an email from Mr. Hallvik asserting that "Clark

25   County plans to proceed with code enforcement in the near future unless a permit is sought by

26   BNSF."  Lynch Decl., ¶ 7; Lynch Decl., Ex. E.  Mr. Lynch delivered the requested letter on

MOTION FOR TRO AND PRELIMINARY INJUNCTION    7
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

November 2, 2018, Lynch Decl., ¶ 8; Lynch Decl., Ex. F, and engaged in another round of telephone calls with Clark County officials, Lynch Decl., ¶¶ 9–10.  During these conversations, Mr. Lynch committed to providing Clark County officials with further information regarding BNSF's legal position by November 19, 2018.  Lynch Decl., ¶ 9.  However, despite repeated requests by Mr. Lynch, Clark County officials would not commit to refrain from following through on their threatened enforcement action against BNSF while the parties continued discussions.  Lynch Decl., ¶¶ 9-11,

BNSF filed this action on November 13, 2018 after these further communications with Clark County officials yielded no progress towards resolution.

## IV.   ISSUE STATEMENT

Does ICCTA preempt Clark County's application of the County Development Code to BNSF's Construction Project?

## V.   ARGUMENT AND AUTHORITY

### A.   Standard of Review

Generally, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The merits—whether ICCTA preempts the application of the County Development Code to the Construction Project— is "the most important" factor.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."  *ET Trading, Ltd. v. ClearPlex Direct, LLC*, No. 15-CV-426-LHK, 2015 WL 913911, at *2 (N.D. Cal. Mar. 2, 2015).  To the extent that the analyses differ, the standard for granting a TRO is more lenient.  *See L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J., dissenting) (noting that, because a preliminary injunction entails "more extensive control of the parties" than a TRO, the standard for granting

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  the former should be "more rigid").

2      No material facts bearing on the merits of BNSF's claim are in dispute here.  The

3  preemptive effect of a federal statute is a question of law.  *Or. Coast Scenic R.R. v. Oregon*

4  *Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016).  The scope of the Construction

5  Project is set forth in governmental documents, including in a Determination of Non-

6  Significance by the Washington State Department of Ecology, and is thus undisputed.  *See*

7  Kaitala Decl., Ex. A at 1–2.  The only question presented here on the merits is legal: whether

8  ICCTA preempts application of the County Development Code to the Construction Project.

9      **B.      BNSF Is Highly Likely to Succeed on the Merits of Its Preemption Claim**

10      This case presents a paradigmatic example of federal preemption under ICCTA:  A local

11  government insists on applying its land-use permitting and preclearance ordinances to railroad

12  construction that is the exclusive responsibility of the STB.  Courts and the STB have

13  consistently rejected such efforts.  The only unusual feature in this case is the fact that the

14  relevant aspects of the County Development Code were approved by the bi-state Commission

15  established under the Gorge Compact between Oregon and Washington.  But as explained

16  below, any careful examination of the Gorge Compact (and the conditions on which Congress

17  gave its consent to the Compact) reveals that the County Development Code is exactly what it

18  appears to be:  a local permitting ordinance, adopted and enforced at the local level—precisely

19  the sort of local interference that Congress forbade in ICCTA.

20      **1.   The Construction Project Falls Within the Federal Surface
          Transportation Board's Statutory Grant of Jurisdiction**

21

22      For federal preemption to apply under ICCTA, "the activity in question must first fall

23  within the statutory grant of jurisdiction to the Surface Transportation Board" under 49 U.S.C.

24  § 10501(a).  *Or. Coast Scenic R.R.*, 841 F.3d at 1072.  For the STB to have jurisdiction under

25  § 10501(a), the activity must meet three elements: it must be (1) "transportation" (2) "by a rail

26  carrier" (3) "as part of the interstate rail network."  *Id.* at 1073.

MOTION FOR TRO AND PRELIMINARY INJUNCTION    9
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    The Construction Project meets all three elements.  *First*, the Construction Project is

2    "transportation" as defined under ICCTA.  ICCTA broadly defines "transportation" as including

3    any "property, facility, instrumentality, or equipment of any kind related to the movement of

4    passengers or property, or both, by rail" as well as "services related to that movement."  49

5    U.S.C. § 10102(9).  Rail repair work is "transportation" because it involves property,

6    instrumentalities, and equipment related to the movements of passengers and property by rail and

7    services related to that movement.  *See Or. Coast Scenic R.R.*, 841 F.3d at 1073 ("[t]he parties do

8    not dispute that the [track] repair work done by Oregon Coast qualifies as 'transportation'").

9        *Second*, BNSF is a rail carrier under ICCTA.  A "rail carrier" is a "person providing

10   common carrier railroad transportation for compensation."  49 U.S.C. § 10102(5).  BNSF

11   undisputedly provides common carrier railroad transportation for compensation; indeed, it

12   operates one of the largest freight railroad networks in North America.

13       *Third*, and finally, the Construction Project is part of the interstate rail network.  ICCTA

14   does not define what is "part of the interstate rail network," but the STB has interpreted it

15   "broadly to include (but not be limited to) facilities that are part of the general system of rail

16   transportation and are related to the movement of passengers or freight . . . in interstate

17   commerce."  *DesertXpress Enters., LLC*, FD 34914, 2010 WL 1822102, at \*9 (STB May 6,

18   2010).  Further, the STB clarified that "transportation between places in the same state [is]

19   within the Board's jurisdiction as long as that transportation [is] related to interstate commerce."

20   *Id.*; *see* 49 U.S.C. § 10501(a)(2) & (2)(A) (providing that the STB's jurisdiction extends "to

21   transportation [by rail] in the United States between a place in . . . a State and a place in the same

22   . . . State as part of the interstate rail network").  The Construction Project clearly falls within this

23   definition.  BNSF's track extends across 28 States for approximately 32,500 route miles.  The

24   stretch of track affected by the Construction Project is connected to BNSF's interstate rail line

25   and carries interstate commerce.

26

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## 2.   The ICC Termination Act Preempts Application of the County Development Code to the Construction Project

2

3          Once jurisdiction is established under 49 U.S.C. § 10501(a), the broad language of

4    49 U.S.C. § 10501(b) makes the STB's jurisdiction exclusive over "transportation by rail

5    carriers" and "construction . . . even if the tracks are located, or intended to be located, entirely

6    within one State."   As explained above, the Construction Project readily falls within the

7    definition of "transportation by rail carrier[]" and "construction."   Accordingly, "the remedies

8    provided under [ICCTA] with respect to regulation of rail transportation are exclusive and

9    preempt the remedies provided under Federal or State law."  49 U.S.C. § 10501(b).   The

10   enforcement remedies that Defendants are threatening with respect to the Construction Project

11   are exactly the state law "remedies" that ICCTA preempts.  *See City of Auburn* 154 F.3d at

12   1029–31; *Or. Coast Scenic R.R.*, 841 F.3d at 1077 (concluding that environmental regulation that

13   gives a state agency discretion to deny permits required for construction of rail projects is subject

14   to ICCTA preemption).

15          This result is inevitable where a land use ordinance like the County Development Code is

16   concerned.  Courts and the STB have repeatedly found that ICCTA preempts similar state and

17   local land use ordinances.  *See, e.g.*, *Green Mountain R.R. v. Vermont*, 404 F.3d 638, 640, 643

18   (2d Cir. 2005) (holding that a state "environmental land use statute" was preempted under

19   Section 10501(b)); *Friends of the Eel River v. N. Coast R.R. Auth.*, 399 P.3d 37, 43 (Cal. 2017)

20   ("[I]t appears settled that the ICCTA would preempt state regulation in the form of the state's

21   imposition of environmental preclearance requirements on a privately owned railroad that

22   prevented the railroad from operating."); *Washington & Idaho R.R.—Pet. for Declaratory Order*,

23   FD 36017, 2017 WL 1037370, at *4, *6 (STB Mar. 15, 2017) (indicating that a "[c]ounty's

24   zoning ordinances and special use permit process" and "state or local permitting or preclearance

25   requirements, including building permits, zoning ordinances, and environmental and land use

26   permitting requirements are categorically preempted as to any facilities that are an integral part

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   of rail transportation"); *DesertXpress Enters., LLC—Pet. for Declaratory Order*, FD 34914,

2   2007 WL 1833521, at *3 (STB June 25, 2007) (granting a declaratory order finding that "state

3   permitting and land use requirements" were preempted under Section 10501(b)).

4   　　　　In the Ninth Circuit, *Oregon Coast Scenic Railroad* is recent and illustrative.  There, a

5   rail carrier sought an injunction against the Oregon Department of State Lands arguing that

6   ICCTA preempted the State from subjecting railroad repair work to its " 'removal-fill law,'

7   which, among other things, requires a state permit for the removal of material from [certain]

8   waters."  *Or. Coast Scenic R.R.*, 841 F.3d at 1071.  The district court declined to enjoin the

9   Oregon agency (on the ground that the railroad work was insufficiently related to interstate

10  commerce).  *Id.*  The Ninth Circuit reversed, explaining that "[b]ecause the ability to impose

11  environmental permitting regulations on the railroad can in fact give local authorities the power

12  to prevent [a carrier] from constructing, acquiring, operating, abandoning, or discontinuing a

13  line, such a permitting scheme would have the effect of managing or governing rail

14  transportation."  *Id.* at 1077 (internal quotation marks omitted).  Thus, the court concluded that

15  the construction activity fell "squarely within [ICCTA's] preemption provision."  *Id.* at 1076.

16  　　　　Just as ICCTA preempts the permitting processes in the cases cited above, the land use

17  permitting process of the County Development Code is preempted by ICCTA as applied to

18  railroad construction.  By threatening to subject the Construction Project to that permitting

19  process, Clark County asserts the power to prevent BNSF from "constructing, acquiring,

20  operating, abandoning, or discontinuing a line."  That scheme has the impermissible effect of

21  governing rail transportation that is exclusively within the STB's jurisdiction.

22  　　　　　　**3.   The County Development Code Is a Local Law Properly Subject to
　　　　　　　　　ICCTA Preemption**

23

24  　　　　Just like any local ordinance, the County Development Code is preempted in its

25  application to the Construction Project.  Notwithstanding the overlay of the Gorge Compact

26  (including the Commission and the Commission's management plan for the Scenic Area), the

MOTION FOR TRO AND PRELIMINARY INJUNCTION    12
USDC Case No. 3:18-cv-5926

1    basic principle of ICCTA preemption applies as it always does:  Federal law preempts state and

2    local agencies from exercising regulatory authority over interstate railroads on issues related to

3    railroad operations.  Every relevant layer of land use planning under the Gorge Compact is a

4    matter of state or local law.  The Commission has taken the improbable contrary view—that

5    county land-use ordinances are federal law, despite the fact that no federal official has any

6    control over their adoption or enforcement.  *See Union Pac. R.R. v. Wasco Cty. Bd. of Comm'rs*,

7    CRGC NO. COA-16-01 (Sept. 8, 2017).  But the Commission's analysis does not withstand

8    scrutiny, and this Court should reject it.

9         **a.**      To begin with, the Commission is a bi-state agency established by the States of

10   Washington and Oregon in the Gorge Compact.  Gorge Compact Art. I ("The States of Oregon

11   and Washington establish by way of this interstate compact a regional agency known as the

12   Columbia River Gorge Commission.").  As such, the Commission is a state entity, not a federal

13   one.  The Ninth Circuit has held that an entity created by an interstate compact is a state

14   "compact entity," rather than a federal agency, when it is "an operational body established by

15   reciprocal [state] legislation whose effectiveness is conditioned upon binding legislative

16   commitments by the states."  *Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power &*

17   *Conservation Planning Council*, 786 F.2d 1359, 1363 (9th Cir. 1986).  That standard is

18   unquestionably satisfied here.  The Commission was established by, and draws its authority

19   from, the Gorge Compact, which is reciprocally enacted into each State's law.  Gorge Compact

20   Art. I.a; *see* RCW § 43.97.015; ORS § 190.150.  And the Commission's establishment and

21   powers were made conditional upon both States' ratification of the Gorge Compact.  Gorge

22   Compact Art. III.

23        Numerous aspects of the Commission's establishment, composition, and powers confirm

24   that it is a state entity.  The Gorge Act, which sets forth the conditions upon which Congress

25   consented to the Compact and is incorporated in full into the Gorge Compact, expressly declares

26   that the Commission is not a federal agency or instrumentality.  16 U.S.C. § 544c(a)(1)(A).  The

Commission's authority to act arises entirely from the Gorge Compact, which confers on the Commission the authority under state law to take the actions contemplated by the Gorge Act. Gorge Compact Art. I.a; *see* RCW § 43.97.015; ORS § 190.150.  Consequently, the Commission "[c]learly[] [acts] under authority of state law." *Tucker v. Columbia River Gorge Comm'n*, 73 Wash. App. 74, 78 (1994).  The Commission's primary functions—to develop land use designations for nonfederal lands within the Gorge, adopt a land management plan, and review local land-use ordinances for consistency with the management plan—concern the "regulation of land use," which "is traditionally a function performed by local governments." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 402 (1979).

The Commissioners are appointed by the Governors of each State, subject to "applicable State law." 16 U.S.C. § 544c(a)(1)(C); Gorge Compact Art. II.a.  Although the Secretary of Agriculture appoints one Commissioner, that Commissioner is an "ex officio, nonvoting member." 16 U.S.C. § 544c(a)(1)(C)(iv).  Thus, the Commission exercises its authorities at the behest of state officials who are accountable to the States.  In addition, the Commission is funded entirely by Washington and Oregon, which makes it subject to complete state control as a practical matter.  Gorge Compact Art. IV.  If the Commission were a federal agency, funding the agency from local rather than federal sources would be a marked departure from normal practice. Gen. Accounting Office, *Principles of Federal Appropriations Law*, at 2-26 (4th rev. ed. 2016) (federal agencies are subject to federal fiscal control); *cf. Fincher v. Fla. Dep't of Labor & Emp't Sec.—Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986) (state control over agency's finances demonstrates that agency is a state entity).  Significantly, the Executive Branch understood the Commission to be a state body at the time of the Gorge Act's enactment: In signing the Act, President Reagan described the Commission as "State-appointed," and its actions as "State action." 22 Weekly Comp. Pres. Docs. 1576 (Nov. 17, 1986).  That state character had consequences:  Because the Commission is a state entity, and its commissioners are not appointed in accordance with the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2, the

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  President concluded that the Commission could not constitutionally override determinations of

2  the Secretary of Agriculture to condemn certain property.  22 Weekly Comp. Pres. Docs. 1576.

3       Certainly, the Gorge Compact required congressional approval to become effective, U.S.

4  Const. Art. I, § 10, cl. 3, and Congress's approval imbued the Gorge Compact with the status of

5  federal law for purposes of interpretation of the Gorge Compact's terms and preemption of

6  contrary state laws.  *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 n.8 (2013).  But

7  it does not follow that the Commission itself is a federal entity or that its actions have the force

8  and effect of federal law.  *See Seattle Master Builders Ass'n*, 786 F.2d at 1363 (rejecting

9  argument that entity was federal because it was created pursuant to interstate compact and

10  federal statute giving advance congressional consent).  Rather, the Supreme Court has repeatedly

11  recognized that interstate compacts approved by Congress may create state instrumentalities.

12  *Lake Country*, 440 U.S. at 401 (an interstate compact may create a state entity, or even "an

13  agency comparable to a county or municipality").  For instance, the Court held that a materially

14  identical bi-state compact agency acted "under color of *state* law" for purposes of 42 U.S.C.

15  § 1983, because the agency "had its genesis" in the compact entered into by the contracting

16  States, the compact became part of the law of each State, the compact agency's commissioners

17  were appointed by the States and accountable to the States, the only federal involvement in the

18  agency took the form of a single nonvoting federally appointed member, and the agency

19  performed traditionally state-law land-use-related functions.  *Lake Country*, 440 U.S. at 399;

20  *accord Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 45 (1994) (observing that Port

21  Authority had both state and local characteristics).  The Gorge Commission shares all of those

22  distinctively state characteristics and is therefore a state, rather than federal, entity.

23      **b.**    It follows naturally that the land management plan adopted by the Commission

24  has the force and effect of state law.  Pursuant to the Gorge Compact and the Gorge Act, the

25  Commission is empowered to adopt a land management plan for the non-federal lands in the

26  Scenic Area.  16 U.S.C. § 544d(c).  The Commission must submit the management plan to the

MOTION FOR TRO AND PRELIMINARY INJUNCTION   15
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    Secretary of Agriculture, to permit the Secretary to determine whether he "concur[s]" that the

2    plan is consistent with the standards set forth in the Gorge Act.  16 U.S.C. § 544d(f).  But it is the

3    *Commission* that has ultimate authority over the content of the management plan because even if

4    the Secretary declines to concur and suggests modifications to the management plan, the

5    Commission may "reject the suggested modifications of the Secretary and adopt a management

6    plan consistent with" the Act.  16 U.S.C. § 544d(f)(3)(B).

7            Because the Commission is not a federal entity, the land management plan that it adopts

8    is a creature of state law, not federal law.  As the Ninth Circuit has recognized in the precise

9    context presented here—preemption of state and local regulation of rail transportation by

10   ICCTA—rules promulgated by a non-federal entity have only the force and effect of state law,

11   not federal law, unless and until they are approved and adopted by a federal agency.  *Ass'n of*

12   *Am. Railroads*, 622 F.3d at 1098 ; *accord Mut. Ins. Co. of Am. v. Royal Appliance Mfg. Co.*, 112

13   F. App'x 386, 391 (6th Cir. 2004).  The Gorge Act expressly provides that the Secretary does *not*

14   have authority to approve or adopt the land management plan, but merely has the authority to

15   review the plan and decide whether or not to concur—and the Commission retains ultimate

16   authority to adopt the plan notwithstanding the Secretary's disagreement.  As a result, the land

17   management plan does not have the force and effect of federal law.

18           The conditions for judicial review on which Congress gave its consent to the Gorge

19   Compact confirm that the land management plan is state law.  The Gorge Act envisions that

20   "any" final "action" taken by the Commission to implement the Gorge Act—a category that

21   presumably includes adoption of the land management plan—may be challenged in the state

22   courts of Oregon and Washington.  16 U.S.C. § 544m(b)(4), (6).  By contrast, actions taken by

23   the Secretary of Agriculture (none of which is at issue here) are appealable to federal court.  16

24   U.S.C. § 544m(b)(4)–(5).  If the Commission had authority to create federal rules, Congress

25   would have likewise provided that those federal rules could be challenged in federal court.

26           The Gorge Act's enactment history and principles of constitutional avoidance reinforce

**K&L GATES LLP**
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    the conclusion that the Commission creates a state law land management plan.  As noted above,

2    the Executive Branch concluded that it would violate the Appointments Clause to permit the

3    Commission to override decisions of the Secretary of Agriculture with respect to matters of

4    federal law.  Specifically, the Act confers on the Secretary interim authority to designate certain

5    lands for federal condemnation, but gives the Commission authority to "disapprove" a proposed

6    federal condemnation action before the Secretary institutes it.  16 U.S.C. § 544h(b)(1).  The

7    ability to override the decisions of a principal officer of the United States with respect to a

8    federal condemnation action would have, in the Executive Branch's view, constituted significant

9    authority pursuant to federal law that would have rendered the commissioners themselves

10   "officers of the United States" who must be appointed pursuant to the Appointments Clause—

11   not by state Governors and counties, as the Commission's members are.  22 Weekly Comp. Pres.

12   Docs. 1576 ("The Federal Government may not constitutionally be bound by such State action

13   taken pursuant to Federal law."); *see Edmond v. United States*, 520 U.S. 651, 662 (1997); *Ass'n

14   of Am. Railroads. v. U.S. Dep't of Transp.*, 821 F.3d 19, 36 (D.C. Cir. 2016).

15        Tellingly, the President did *not* object to the Commission's ability to override the

16   Secretary's disagreement with respect to the land management plan.  If that plan were a matter of

17   federal law, the Commission's authority to overrule the Secretary's views would have raised the

18   very same serious constitutional questions as the condemnation-disapproval provision.  The

19   President thus necessarily understood the management plan to be a matter of *state* law—

20   something within the Commission's state-conferred regulatory authority.  That construction

21   avoids the serious constitutional questions that otherwise would be present.  *See Clark v.

22   Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory

23   constructions to adopt, a court must consider the necessary consequences of its choice.  If one of

24   them would raise a multitude of constitutional problems, the other should prevail . . . .").

25       **c.**     Finally, as most relevant here, county land-use ordinances adopted pursuant to the

26   Gorge Compact—like the County Development Code—are local laws that do not have the force

MOTION FOR TRO AND PRELIMINARY INJUNCTION     17
USDC Case No. 3:18-cv-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    and effect of federal law.  The Gorge Compact provides that counties within the Scenic Area

2    shall adopt land-use ordinances consistent with the management plan, subject to approval by the

3    Commission.  *See* 16 U.S.C. § 544e(b).  Land-use regulations are matters of traditional state

4    concern that are within the authority of local governments in Washington and Oregon.  *See Hess*,

5    513 U.S. at 44; *see also, e.g.*, RCW § 36.70A.040 (providing for city and county land-use

6    planning); ORS § 215.050 (granting counties authority to promulgate comprehensive land-use

7    ordinances).  By providing that "counties"—local subdivisions of the States, with local

8    governing authority—should enact land-use "ordinances," the Compact and the Act reflect the

9    States' and Congress's recognition of the traditionally local nature of land-use regulation, and

10   their intent to leave intact that local character.  Gorge Compact Art. I.a; 16 U.S.C. § 544e(b); *cf.*

11   *Tucker*, 73 Wash. App. at 79 (land-use decisions contemplated by the Compact and the Act "are

12   intended to act locally and, thus, be reviewed as [] any other land use decision").

13          Because counties are corporate bodies that have authority to enact regulations only with

14   local force and effect, the county ordinances contemplated by the Gorge Compact and the Gorge

15   Act are local enactments with the force and effect of local law.  And although such ordinances

16   must be approved by the Commission, the Commission is itself a bi-state entity, and it reviews

17   the ordinances for consistency with the land management plan, which has the force of state law.

18   The Gorge Act's judicial review provisions further confirm that counties' land-use ordinances

19   have the force and effect of state law, allowing any person aggrieved by "any land use

20   ordinance" to challenge the ordinance in the state courts of Oregon or Washington.  *See* 16

21   U.S.C. § 544m(b)(4), (6).  If such an ordinance were a matter of federal law, Congress would

22   have directly provided for federal court jurisdiction over such challenges, rather than

23   conditioning its consent on the States opening their courts for judicial review.

24          d.      The Commission has nonetheless concluded that the land management plan and

25   county land-use ordinances are federal law.  *Union Pac. R.R. v. Wasco Cty Bd. of Comm'rs*,

26   CRGC NO. COA-16-01 (Sept. 8, 2017).  The Commission's analysis is threadbare and unsound.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*First*, the Commission analogized the land management plan to "state implementation plans" (SIPs) that are promulgated under the federal Clean Air Act by States and approved by the Administrator of the federal Environmental Protection Agency. *Union Pacific* at 15.  But SIPs are accorded the force and effect of federal law only once they are adopted by the Administrator—and the Ninth Circuit has expressly held that in the absence of such federal adoption, state-promulgated implementation plans have only the force and effect of state law. *Ass'n of Am. Railroads*, 622 F.3d at 1098.  Under the Gorge Compact, the Commission's land management plan need not be approved by the Secretary of Agriculture, and more to the point, county land-use ordinances are approved *only* by the Commission.  That makes all the difference.  Under *Association of American Railroads*, the land management plan and land-use ordinances remain state law because they are *not* adopted by any federal official.

*Second*, the Commission mistakenly believed that federal courts have held that local regulations promulgated pursuant to an interstate compact have the force and effect of federal law.  *Union Pacific* at 14.  But *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Department of Environmental Management*, 585 F.3d 42, 49 (1st Cir. 2009), on which the Commission relied, held nothing of the sort.  Instead, the court held only that it had federal-question jurisdiction over a claim asserting that a "state regulatory scheme" adopted pursuant to an interstate compact was inconsistent with federal law.  The court took as given that the regulatory scheme was a matter of state law.  *Id.* at 50. The Commission also relied on two district court decisions, but those decisions are contrary to Ninth Circuit precedent, as they held that local ordinances enacted pursuant to an interstate compact must have the force and effect of federal law simply because they were enacted pursuant to a "federally authorized regulatory scheme." *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*, 24 F. Supp. 2d 1062, 1068 (E.D. Cal. 1998); *Stephans v. Tahoe Reg'l Planning Agency*, 697 F. Supp. 1149, 1152 (D. Nev. 1988).  That conclusion is irreconcilable with *Association of American Railroads*, 622 F.3d at 1098, which held that state regulations promulgated pursuant to a federal

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    environmental law constitute state law unless expressly adopted by a federal official.

2         *Finally*, the Commission relied on an Oregon Supreme Court decision holding that the

3    Commission's construction of the Gorge Act should receive *Chevron* deference.  *Union Pacific*

4    at 14 (citing *Friends of the Columbia Gorge v. Columbia River Gorge Comm'n*, 346 Or. 366,

5    384, 410 (2009)).  But that holding predates and is contrary to the Supreme Court's instruction

6    that an interstate compact agency should receive judicial deference only if the compact expressly

7    so provides.  *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  In other words, interstate

8    compact agencies have no intrinsically federal character that entitles them to *Chevron* deference.

9    Here, the Gorge Compact does not provide that the Commission's understanding of the Compact

10   or the Gorge Act is entitled to any judicial deference.  Nor would there be any logic in this

11   particular case in deferring to an *administrative* resolution of a question quintessentially within

12   *judicial* competence:  whether a law is properly regarded as a state law or as a federal law for

13   purposes of preemption analysis under the Supremacy Clause of the federal Constitution.  The

14   Commission's conclusion that land-use ordinances are federal law is contrary to Ninth Circuit

15   and Supreme Court precedent, and this Court should therefore disregard it.

16                                         * * *

17        Because the County Development Code is a local law, not a federal law, it is subject to

18   the consistent holdings of courts and the STB alike that ICCTA preempts local land-use

19   permitting and preclearance laws.  BNSF is therefore highly likely—indeed, certain—to prevail

20   on the merits of its claim that the County Development Code cannot be applied to the

21   Construction Project.

22        C.    <u>**A Temporary Restraining Order and Preliminary Injunction Are Warranted**</u>

23        Each of the other *Winter* factors discussed below also favors a TRO and preliminary

24   injunction.  *See* 555 U.S. at 20.

25        **1.**    Unless Defendants are restrained from imposing the County Development Code's

26   permitting process on the Construction Project, BNSF is likely to suffer one or more forms of

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

irreparable harm.  Allowing Defendants to go forward will put BNSF on the horns of the

dilemma that Congress recognized was detrimental to interstate commerce:  either undergo a

local permitting process, or else cease improving the interstate rail network.  Neither result is

acceptable under federal law, and each will significantly and irreparably harm BNSF.

To be clear, ICCTA reflects Congress's judgment that *the permitting process itself*—

quite apart from its substantive outcome—undermines important federal interests by inflicting

unacceptable harm on both the railroad in question and the interstate rail system more generally.

That is so for two reasons.  *First*, such process can impose significant burdens on rail carriers—

and thus interstate commerce as a whole—without furthering any legitimate state interest

because the State cannot, as a substantive matter, ultimately impose any valid permitting

restriction on the affected rail carrier.  "[S]tate or local permitting or preclearance requirements,

including . . . zoning ordinances, and environmental and land use permitting requirements, are

categorically preempted as to any facilities that are an integral part of rail transportation" because

49 U.S.C. § 10501(b) "prevents states and localities from imposing requirements that, by their

nature, could be used to deny a rail carrier the ability to conduct rail operations." *Soo Line R.R.*

*Co.—Pet. for Declaratory Order*, FD 35850, 2014 WL 7330097, at *4 (STB Dec. 22, 2014); *see*

*also Or. Coast Scenic R.R.*, 841 F.3d at 1077 (finding preemption because the ability to impose

permitting regulations "can in fact give local authorities the power to prevent a carrier from . . .

operating . . . a line"); *DesertXpress*, 2007 WL 1833521, at *3 n.4 (identifying such requirements

as "state and local actions [that are] preempted regardless of the context or rationale for the

action").  *Second*, such permitting processes introduce delay that deprives rail carriers, shippers,

and the public at large of the immediate benefits of improved rail facilities.  The permitting

process itself "can be time-consuming, allowing a local body to delay construction of railroad

facilities almost indefinitely." *Green Mountain R.R.*, 404 F.3d at 643.  At the same time,

preemption does not turn on the severity of the burden imposed:  "[W]hat is preempted here is

the permitting process itself, not the length or outcome of that process in particular cases." *Id.* at

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

644.

Both of those concerns correspond to irreparable harms that BNSF is likely to suffer.  If BNSF is forced to participate in the permitting process, it will expend resources to comply with a regime that Congress intended to nullify.  *See* Kaitala Decl., ¶ 8 (describing resources that may be necessary to participate in permitting process).  And if the permitting process delays completion of the Construction Project, that will delay the day when BNSF can realize the benefits of a more efficient operation with the capacity it needs to serve shippers.  *See* Kaitala Decl., ¶¶ 6, 7 (describing the imperative to upgrade this component of BNSF's network, particularly to ameliorate the difficulty of moving traffic during the winter months).

From ICCTA's perspective, the only thing worse than BNSF subjecting itself to Clark County's permitting process would be if BNSF was stymied in its development of its interstate rail network.  That would inevitably cost BNSF the business and goodwill of any shippers that turn to competitors when BNSF cannot meet their needs.  *See* Kaitala Decl., ¶ 7 (describing business risks to BNSF from inability to complete this and similar projects).  Such competitive disadvantages and loss of goodwill are routinely recognized as irreparable.  *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."); *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("*ATA v. LA*") (recognizing that loss of goodwill can constitute irreparable harm).

Even if some of these harms—costs of engaging in the permitting process or forgone business opportunities—could be reduced to dollars and cents, they would remain irreparable because BNSF may have no way to recover from the County in damages.  *See Cent. Valley Chrysler-Plymouth v. Cal. Air Res. Bd.*, No. CV-F-02-5017, 2002 WL 34499459, at *7 (E.D. Cal. June 11, 2002) (finding irreparable harm in preemption challenge to state regulations "based on the excessive cost of [regulatory] compliance when coupled with the inability to recoup those costs"); *see also Am. Trucking Ass'ns, Inc. v. City of L.A.*, No. 08-4920, 2010 WL 4313973, at *3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

(C.D. Cal. Oct. 25, 2010) (granting injunction pending appeal in preemption challenge to local regulation "because there is no evidence that [plaintiffs] can recoup their economic losses through a damage award or by some other means"). The right way to redress the threat of injury to BNSF is to restrain Defendants from inflicting it in the first place.

      **2.**      In a case that seeks to vindicate the supremacy of federal law, the equities and the public interest converge with the merits. "[I]t is clear that it would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law . . . . In such circumstances, the interest of preserving the Supremacy Clause is paramount." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852–53 (9th Cir. 2009), *vacated on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012); *see ATA v. LA*, 559 F.3d at 1059–60 (finding district court abused its discretion in determining that a preliminary injunction against preempted regulation was not in the public interest, explaining that, "while we do not denigrate the public interest represented by the [governmental agency], that must be balanced against the public interest represented in Congress' decision to [enact preemptive federal law], and the Constitution's declaration that federal law is to be supreme"); *Bioganic Safety Brands, Inc. v. Ament*, 174 F. Supp. 2d 1168, 1179 (D. Colo. 2001) ("The public interest element . . . is satisfied when the injunction seeks to enforce express federal preemption from state encroachment because Congress has already found that exclusive federal regulation in such matters is in the public interest."). Because the merits of BNSF's preemption claim are compelling, the balance of equities and public interest likewise strongly support restraining Defendants from enforcing the County Development Code in violation of federal law.

      **D.**      <u>**The Court Should Not Require a Bond as a Condition of the TRO**</u>

      Courts may issue a preliminary injunction or TRO only if the moving party gives security in an amount the court determines to be proper to pay the costs and damages of any party found to be wrongfully enjoined or restrained. *See* Fed. R. Civ. P. 65(c). "The district court retains discretion as to the amount of security required, if any." *Diaz v. Brewer*, 656 F.3d 1008, 1015

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  (9th Cir. 2011) (internal quotation marks and citation omitted).  The court may "dispense with

2  the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant

3  from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

4  No bond is necessary here because there is no realistic likelihood of harm to Clark

5  County resulting from a temporary restraining order.  As discussed above, the application of

6  Clark County ordinances and code enforcement procedures to the Construction Project is

7  preempted by federal law.  It is not apparent what harm the County could possibly suffer from a

8  brief delay in taking action it is not permitted under federal law to take in any event.  Indeed,

9  completing the Construction Project would *benefit* Clark County.  *See* Kaitala Decl., Ex. A (DNS

10 describing local benefits of the Construction Project).  If the County can articulate any harm,

11 BNSF would be willing to post an appropriate bond or other security upon entry of a preliminary

12 injunction.  But none is immediately necessary:  BNSF and its predecessor railroads have

13 maintained a continuous physical presence in the judicial district for well over a century.  No

14 reason exists for concern that the County will find itself without adequate security while it is

15 restrained for a matter of weeks.

16 **VI.    CONCLUSION**

17 For the foregoing reasons, the Court should temporarily restrain Defendants from taking

18 any action to enforce the County Development Code against the Construction Project pending a

19 hearing, and after a hearing, convert its temporary restraining order to a preliminary injunction.

20 The Court may wish to consolidate the hearing on the motion for preliminary injunction with the

21 trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).  *See Or. Coast Scenic*

22 *R.R.*, 841 F.3d at 1071 (noting the district court's use of such a procedure).[*]

23 Respectfully submitted.

24

[*] Per LCR 65(b)(1), the contact information for opposing party's counsel is: Tony Golik,
25 Prosecuting Attorney, 1013 Franklin Street, Vancouver, WA 98666; Phone: 564-397-2261; Fax:
564-397-2230; Taylor Hallvik, Deputy Prosecuting Attorney, Clark County Prosecutor's Office,
26 Civil Division, 1300 Franklin Street, Vancouver, WA 98666; Phone: 564-397-2478; Fax: 564-
397-2184; taylor.hallvik@clark.wa.gov.

MOTION FOR TRO AND PRELIMINARY INJUNCTION   24
USDC Case No. 3:18-cv-5926

1   DATED this 14th day of November, 2018.

2                                    K&L GATES LLP
                                     By _____/s/ James M. Lynch_____
3                                       James M. Lynch, WSBA #29492
                                     By _____/s/ J. Timothy Hobbs_____
4                                       J. Timothy Hobbs, WSBA #42665
                                        K&L Gates LLP
5                                       925 Fourth Avenue, Suite 2900
                                        Seattle, WA 98104
6                                       Telephone: (206) 623-7580
                                        Fax: (206) 623-7022
7                                       Jim.Lynch@klgates.com
                                        Tim.Hobbs@klgates.com
8
                                     By _____/s/ Barry Hartman_____
9                                       Barry Hartman (pro hac vice pending)
                                        K&L Gates LLP
10                                      1601 K Street, NW
                                        Washington, DC 20006-1600
11                                      Telephone: (202) 778-9000
                                        Fax: (202) 778.9100
12                                      Barry.Hartman@klgates.com

13                                   MUNGER, TOLLES & OLSON LLP
                                     By _____/s/ Benjamin J. Horwich_____
14                                      Benjamin J. Horwich (pro hac vice pending)
                                     By _____/s/ Allison M. Day_____
15                                      Allison M. Day (pro hac vice pending)
                                     By _____/s/ Andre W. Brewster III_____
16                                      Andre W. Brewster III (pro hac vice pending)
                                        Munger, Tolles & Olson LLP
17                                      560 Mission Street, Twenty-Seventh Floor
                                        San Francisco, CA 94105
18                                      Telephone: (415) 512-4000
                                        Fax: (415) 512-4000
19                                      Ben.Horwich@mto.com
                                        Allison.Day@mto.com
20                                      Andy.Brewster@mto.com

21                                   By _____/s/ Ginger D. Anders_____
                                        Ginger D. Anders (pro hac vice pending)
22                                      Munger, Tolles & Olson LLP
                                        1155 F Street NW, Seventh Floor
23                                      Washington, DC 20004
                                        Telephone: (202) 220-1100
24                                      Fax: (202) 220-2300
                                        Ginger.Anders@mto.com
25
                                     *Attorneys for Plaintiff BNSF Railway Co.*
26

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022