# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | CIVIL NO. 3:18-cv-5926-BHS |
| Plaintiff, | ) | |
| | ) | INTERVENOR COLUMBIA RIVER |
| v. | ) | GORGE COMMISSION'S RESPONSE |
| | ) | TO MOTION FOR PRELIMINARY |
| CLARK COUNTY, WASHINGTON, | ) | INJUNCTION |
| et al., | ) | |
| | ) | NOTING DATE: December 19, 2018 |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |
| | ) | |

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

**TABLE OF CONTENTS**

LIST OF AUTHORITIES..................................................................................................... ii

I.      INTRODUCTION ...................................................................................................1

II.     PRIMER ON THE COLUMBIA RIVER GORGE NATIONAL SCENIC
        AREA....................................................................................................................3

        A.      The Columbia River Gorge...................................................................3

        B.      The Columbia River Gorge National Scenic Area Act of 1986 and
                Columbia River Gorge Compact ............................................................4

        C.      The Columbia River Gorge National Scenic Area Management
                Plan .......................................................................................................7

        D.      Land Use Ordinances Required to Implement the Management
                Plan .......................................................................................................8

III.    RESPONSE TO BNSF'S ARGUMENTS....................................................................8

        A.      Criteria for a Preliminary Injunction.....................................................8

        B.      Preemption is not the applicable law; harmonizing two federal
                laws is the applicable law. .....................................................................10

        C.      Clark County is implementing the federal National Scenic Area
                Act........................................................................................................11

                1.      The Gorge Commission is not a state agency............................11

                2.      The Columbia River Gorge National Scenic Area
                        Management Plan is not state law..............................................13

                3.      BNSF is mistaken that Clark County's National Scenic
                        Area Unified Development Code does not implement
                        federal law...............................................................................20

                4.      BNSF improperly collaterally attacks a prior Gorge
                        Commission order....................................................................22

IV.     UNION PACIFIC IS NOT LIKELY TO SUCCEED ON THE MERITS .......................22

V.      CONCLUSION....................................................................................................23

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                    i

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

# LIST OF AUTHORITIES

**STATUTES**

16 U.S.C. §§ 544 to 544p (the Columbia River Gorge National Scenic
Area Act, Pub. L. No. 99-663, 100 Stat. 4274 (1986))....................................................1, 5

16 U.S.C. § 544a.................................................................................................5, 18

16 U.S.C. §544b.....................................................................................................14

16 U.S.C. § 544c...................................................................................5, 6, 17, 18, 21

16 U.S.C. § 544d.................................................................................................7, 21

16 U.S.C. § 544e.................................................................................................8, 21

16 U.S.C. § 544f............................................................................................7, 8, 15, 21

16 U.S.C. §544h.....................................................................................................21

16 U.S.C. § 544i......................................................................................................8

16 U.S.C. § 544*l*....................................................................................................8

16 U.S.C. § 544m.................................................................................................11, 22

16 U.S.C. § 544n......................................................................................................8

16 U.S.C. § 544o......................................................................................................6

ORS 196.150 (Columbia River Gorge Compact)...........................................................6

ORS 196.155.............................................................................................................6

RCW 43.97.015 (Columbia River Gorge Compact)....................................................6, 20

RCW 43.97.025(1)......................................................................................................6

**LEGISLATIVE HISTORY**

132 Cong. Rec. 29,498 (1986) (statement of Sen. Packwood (Oregon)). .........................4

132 Cong. Rec. 29,498 (1986) (statement of Sen. Evans (Washington)).........................4

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

132 Cong. Rec. 32,245 (1986) (proposed amendment by Rep. Smith (Oregon))..................................................................................5

132 Cong. Rec. 32,246 (1986) (statement of Rep. Morrison (Oregon))............................5

132 Cong. Rec. 32,246 (1986) (statement of Rep. Aucoin (Oregon))...............................5

132 Cong. Rec. 32,246 (1986) (statement of Rep. Weaver (Oregon)). ...........................5

132 Cong. Rec. 32,246 (1986) (statement of Rep. Vento (Minnesota))............................5

**COURT AND AGENCY DECISIONS**

*3570 E. Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1257 (C.D. Cal. 1995)..................................................................................9

*Arkansas v. Oklahoma*, 503 U.S. 91 (1992) ...................................................17

*Ass'n of Am. R.R.s v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010) ...................................................................1–2, 10, 17

*Cal. Tahoe Reg'l Planning Agency v. Sahara Tahoe Corp.*, 504 F. Supp. 753 (D. Nev. 1980) .................................................................18

*City of South Lake Tahoe v. Tahoe Reg'l Planning Agency*, 664 F. Supp. 1375 (E.D. Cal. 1987) .........................................................16

*Columbia River Gorge Comm'n v. Hood River County*, 152 P.3d 997, 210 Or. App. 689 (2007)...................................................12, 12–13, 14, 20

*Columbia River Gorge United v. Yeutter*, 960 F.2d 110 (9th Cir. 1992)...............6, 7, 8, 20

*Cuyler v. Adams*, 449 U.S. 433 (1981) ..............................................................6

*Friends of the Columbia Gorge v. Columbia River Gorge Comm'n*, 171 P.3d 942, 215 Or. App. 557 (2007).............................................................7, 14

*Friends of the Columbia Gorge v. Columbia River Gorge Comm'n*, 213 P.3d 1164, 346 Or. 366 (2009) .........................................................14

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015). ......................................9

*GLW Ventures LLC v. U.S. Dep't of Agriculture*, 261 F. Supp. 3d 1098 (W.D. Wash. 2016) ................................................................22

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)

iii

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

*GLW Ventures, LLC v. U.S. Dep't. of Agriculture, U.S. Forest Service*, No. C14-5806-RBL (W.D. Wash. Dec. 16, 2014) (Dkt. # 12, Order Granting Motion to Intervene). ........................................................................12

*Joint Petition for Declaratory Judgment Order – Boston and Maine Corp. and Town of Ayer, MA*, STB No. FD 33971 0, 2001 STB LEXIS 435 (May 1, 2001). ................................................................................................1, 10, 23

*Klickitat County v. Columbia River Gorge Comm'n*, 770 F. Supp. 1419, (E.D. Wash. 1991). ..............................................................................12, 19

*Klickitat County v. State*, 862 P.2d 629, 71 Wash. App. 760 (1993)...............14, 19, 20, 21

*Lake Tahoe Watercraft Rec. Ass'n v. Tahoe Reg'l Planning Agency*, 24 F. Supp. 2d 1062, (E.D. Cal. 1998)................................................................16, 16–17

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873 (9th Cir. 2009)...........................................................................................9

*Murray v. State*, 124 P.3d 1261, 203 Or. App. 377 (2005) ................................12

*Rhode Island Fisherman's Alliance v. R.I. Dep't of Envtl. Mgmt.*, 585 F.3d 42 (1st Cir. 2009) ...........................................................................15–16

*Safe Air for Everyone v. EPA*, 488 F.3d 1088 (9th Cir. 2007)........................17

*Seattle Master Builders v. Pac. Nw. Elec. Power and Conserv. Planning Council*, 786 F.2d 1359 (9th Cir. 1986)......................................................18, 19

*Skamania County v. Woodall*, 16 P.3d 701, 104 Wash. App. 525 (2001) ..................18–20

*Stephans v. Tahoe Reg'l Planning Agency*, 697 F. Supp. 1149 (D. Nev. 1988). .............................................................................................16

*Trustees for Alaska v. Fink*, 17 F.3d 1209 (9th Cir. 1994) ...............................17

*Tucker v. Columbia River Gorge Comm'n*, 867 P.2d 686, 73 Wash. App. 74 (1994)..........................................................................................12, 21

*Union Pacific R.R. Co. v. Wasco County*, No. A166300 (Or. App. Nov. 7, 2017) (petition for judicial review filed). ...........................................................22

*W. Birkenfeld Trust v. Bailey*, 827 F. Supp. 651 (E.D. Wash. 1993)................................12

*Winter v. NRDC*, 555 U.S. 7 (2008). ..................................................................8, 9

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)

iv

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

*Yakima Valley Memorial Hosp. v. Washington State Dep't of Health*, 654
F.3d 919 (9th Cir. 2011) ..................................................................................13

**ARTICLES AND BOOKS**

Bowen Blair, Jr., *The Columbia River Gorge National Scenic Area: The
Act, Its Genesis and Legislative History*, 17 ENVTL. L. 863 (1987). ............................4, 17

MICHAEL L. BUENGER, ET AL., THE EVOLVING LAW AND USE OF
INTERSTATE COMPACTS 2d ed. (ABA Publ'g 2016). .............................................6, 15, 21

Eugene S. Hunn, *Sk'in, The Other Side of the River*, 108 OR. HIST. Q. 614
(Winter 2007). ....................................................................................................4

JEFFREY B. LITWAK, INTERSTATE COMPACT LAW: CASES AND MATERIALS
3d ed. (Semaphore Press 2018). ........................................................................15

Note, *Charting No Man's Land: Applying Jurisdictional and Choice of
Law Doctrines to Interstate Compacts*, 111 HARV. L. REV. 1991, (1998). ......................18

Robert Packwood, *The Columbia River Gorge Needs Federal Protection*,
15 ENVTL. L. 67 (1988). ......................................................................................4

Lawrence Watters, *The Columbia River Gorge National Scenic Area Act*,
23 ENVTL. L. 1127 (1993). ..................................................................................4

**OTHER AUTHORITIES**

Columbia Gorge Committee, Pacific Northwest Regional Planning
Comm'n, *Land Program Recreational Project: Columbia Gorge
Washington-Oregon*, June 1935 (on file with the Oregon Historical
Society). ..............................................................................................................4

Management Plan for the Columbia River Gorge National Scenic Area. ................. passim

Tahoe Regional Planning Compact ..................................................................7

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                    v

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

# I.    INTRODUCTION

BNSF bases its motion for preliminary injunction solely on the incorrect legal assumption that Clark County does not implement the federal Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544 to 544p, when it requires BNSF to apply for a National Scenic Area approval.  Believing that the Interstate Commerce Commission Termination Act ("ICCTA") completely preempts the National Scenic Area development standards, adopted and implemented by the U.S. Forest Service, the Gorge Commission, and Clark County (Dkt. # 8 at p. 20–28[1]), BNSF decided for itself that it does not need National Scenic Area review and approval and began work, and now seeks a preliminary injunction to allow it to continue work (i.e., to change the status quo) without complying with federal law.  BNSF further seeks to change the status quo because it has consistently applied for National Scenic Area review (and received approvals for each application) in the past.  Because BNSF seeks to change the status quo, it not is entitled to a preliminary injunction.

BNSF also cannot establish that it is likely to succeed on the merits because the Surface Transportation Board (STB) has already interpreted the ICCTA and concluded, "nothing in section 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes." *Joint Petition for Declaratory Judgment Order – Boston and Maine Corp. and Town of Ayer, MA*, STB No. FD 33971 0, 2001 STB LEXIS 435 at *19–20 (May 1, 2001).  The STB stated that the application of federal environmental laws to railroad projects is a fact-bound question and that each situation need to be reviewed individually.  *Id*. at *20.  The Ninth Circuit follows this approach, citing *Town of Ayer* with approval, stating, "If an

---

[1] Page numbers in citations to Dkt. documents refer to PACER page numbers.

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1   apparent conflict exists between ICCTA and a *federal* law, courts must strive to harmonize the

2   two laws, giving effect to both laws if possible" *Ass'n of Am. R.R.s v. S. Coast Air Quality*

3   *Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010) (emphasis in original). BNSF did not inform

4   the court of these directly applicable and precedential authorities.

5         There is no serious dispute that Clark County is implementing federal law. The National

6   Scenic Area Act requires the U.S. Forest Service and Gorge Commission to adopt a Management

7   Plan and requires Clark County to enact and implement a National Scenic Area land use

8   ordinance to implement the Management Plan and National Scenic Area Act. The National

9   Scenic Area Act also requires federal approval of Clark County's ordinance—the Gorge

10   Commission must approve it as consistent with the Management Plan and the National Scenic

11   Area Act, and U.S. Secretary of Agriculture must concur with that finding. Furthermore, a

12   portion of the project at issue is located within one of the congressionally designated "special

13   management areas," for which the U.S. Secretary of Agriculture has exclusive authority to draft

14   the provisions of the Management Plan and has a defined role in implementing, including for

15   BNSF's project. (Shoal Decl. at 2–4).

16         BNSF's repeated use of the word "state" in its briefing in reference to the National

17   Scenic Area Management Plan and Clark County's National Scenic Area Unified Development

18   Code does not change 30 years of federal and state judicial application of the National Scenic

19   Area authorities, which have concluded—largely without exception—that these National Scenic

20   Area authorities are <u>not</u> state law, but are "required by federal law," "constitute a federal

21   program," and are "not a state program."

22         BNSF has sought and received eight National Scenic Area approvals since the ICCTA

23   was enacted in 1995. (Andring Decl. at 1–2). This demonstrates that it is possible to harmonize

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)

2

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

the two federal laws.  BNSF must apply to Clark County so Clark County can harmonize the two

laws as necessary.  BNSF offers no argument or facts suggesting that federal railroad law and the

National Scenic Area authorities cannot be harmonized for the instant project, hence, BNSF

cannot establish that it is likely to succeed on the merits.

Section II of this brief gives an overview of the Columbia River Gorge National Scenic

Area Act land management program.  Section III of this brief points out incorrect statements and

conclusions and incomplete authority in BNSF's arguments, and provides the court with the

complete picture of statutory and case law that has interpreted and applied the National Scenic

Area Act, other National Scenic Area authorities, and comparable interstate compacts.  Section

IV summarizes the reasons why BNSF is not likely to succeed on the merits.

## II.   PRIMER ON THE COLUMBIA RIVER GORGE NATIONAL SCENIC AREA.

### A.      The Columbia River Gorge

Just east of Portland, Oregon and Vancouver, Washington, the Columbia River passes

through the Cascade Mountain Range at near sea level, forming the Columbia River Gorge.

Lewis and Clark traveled through the Gorge on the final leg of their historic 1805 expedition.

Today, the Gorge forms a portion of the border between Oregon and Washington and continues

to be an area of breathtaking scenery, myriad recreational opportunities, unique flora and fauna,

an American Viticultural Area designation, and a new technology and aerospace industrial

cluster.  In addition, being the only sea-level inland passage on the west coast between San

Francisco and the Canadian border, the Gorge is a vital transportation corridor with railroads and

highways on both sides of the river and barge traffic on the river.  Human use of the Gorge dates

back over 10,000 years with tribal nations that lived and had their own economic centers in the

Gorge, including important village and burial sites that BNSF's railroad tracks, signal wires,

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                            3

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

access roads, and other infrastructure currently cross. *See, e.g.*, Eugene S. Hunn, *Sk'in, The Other Side of the River*, 108 OR. HIST. Q. 614 (Winter 2007) (describing the village on the north side of Celilo Falls on the Columbia River).

Washington and Oregon have jointly managed the Columbia River fisheries since 1915 pursuant to the Columbia River Compact. For a long time, however, the states could not agree how to manage land use in the Columbia River Gorge. For example, in 1935, the Pacific Northwest Regional Planning Commission recommended joint management of the area in the form of an interstate park. Columbia Gorge Committee, Pacific Northwest Regional Planning Comm'n, *Land Program Recreational Project: Columbia Gorge Washington-Oregon*, June 1935, 1 (on file with the Oregon Historical Society). Instead, in the 1950s, the states created parallel advisory commissions; however, the effectiveness of these advisory commissions was "hampered by their advisory authority, meager funding, and by hostility from certain counties in the Gorge . . . ." Bowen Blair, Jr., *The Columbia River Gorge National Scenic Area: The Act, Its Genesis and Legislative History*, 17 ENVTL. L. 863, 879 (1987).

Because the two states had conflicting approaches to land use, Congress recognized that it was essential to have uniform standards that transcended state law. *Id*. at 872; Lawrence Watters, *The Columbia River Gorge National Scenic Area Act*, 23 ENVTL. L. 1127, 1128–29 (1993). *See also* Robert Packwood, *The Columbia River Gorge Needs Federal Protection*, 15 ENVTL. L. 67 (1988); 132 Cong. Rec. 29,498 (1986) (statement of Sen. Packwood (Oregon)); *id*. (statement of Sen. Evans (Washington)).

B.     The Columbia River Gorge National Scenic Area Act of 1986 and Columbia River Gorge Compact

Congress took note that the two states' separate land use planning systems could not effectively manage the bi-state land resources in the Gorge, and after several years of introduced

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                    4

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

bills, hearings, and debates, enacted the Columbia River Gorge National Scenic Area Act, Pub. L. No. 99-663, 100 Stat. 4274 (1986), codified as amended at 16 U.S.C. §§ 544 to 544p (2012). The legislative history is filled with statements and actions suggesting that the National Scenic Area development standards would be much more than state law. For example, Rep. Robert Smith (OR) proposed to amend the final bill to require that the National Scenic Area standards be no more restrictive than Oregon's existing land use standards. 132 Cong. Rec. 32,245 (1986). The proposed amendment was resoundingly defeated. Rep. Morrison (WA) argued that deferring to one state's land use law was neither appropriate nor fair. *Id.* at 32,246. Rep. AuCoin (OR) agreed with Rep. Morrison. *Id.* Rep. Weaver (OR) also rejected Rep. Smith's proposed amendment because it would cause different land use standards between the states. *Id.* Rep. Vento (MN) similarly rejected the amendment based on the lack of uniformity and because deference to state law would merely maintain the status quo of land use regulation. *Id.*

The National Scenic Area Act created the nearly 300,000-acre Columbia River Gorge National Scenic Area with land area in portions of three counties in Oregon and three counties in Washington, including Clark County, Washington. The primary purpose of the Act is to protect and provide for the enhancement of the scenic, cultural, recreational, and natural resources of the Columbia River Gorge. 16 U.S.C. § 544a. The second purpose of the Act is to provide for economic development consistent with the first purpose. *Id.*

The federal legislation was also Congress's preauthorization for Oregon and Washington to enter into an interstate compact to create the bi-state Gorge Commission to partner with the U.S. Forest Service to manage development within the National Scenic Area consistent with the standards in the National Scenic Area Act. 16 U.S.C. § 544c. That compact, the Columbia

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)

5

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

1 River Gorge Compact, is codified at ORS 196.150 and RCW 43.97.015.[2]  In *Cuyler v. Adams*,

2 449 U.S. 433, 438 (1981), the Supreme Court concluded that an interstate compact is federal law

3 if it has received the consent of Congress and its subject matter is appropriate for federal

4 legislation.  The Columbia River Gorge Compact satisfies both criteria.  The Columbia River

5 Gorge National Scenic Area Act contains Congress's consent for Oregon and Washington to

6 enter into the Columbia River Gorge Compact, 16 U.S.C. § 544c(a), and the Ninth Circuit has

7 determined that the subject matter is appropriate for federal legislation under the Commerce

8 Clause.  *Columbia River Gorge United v. Yeutter*, 960 F.2d 110 (9th Cir. 1992).

9        As a condition to its consent to the compact, Congress specifically required the Gorge

10 Commission and counties to possess the necessary authority to implement the National Scenic

11 Area Act.  16 U.S.C. §§ 544o(d) and 544c(a)(1)(B).  These provisions, together with ORS

12 196.155 and RCW 43.97.025(1) (in which the states grant power to the Gorge Commission and

13 counties), comprehensively provide the Gorge Commission and counties with the necessary

14 federal and state authority to carry out the Act.  BNSF's persistent arguments throughout its

15 briefing that the Gorge Commission and Clark County's authority comes solely from state law

16 (Dkt. # 8 *passim*) are incorrect.  The authority to implement the National Scenic Area Act comes

17 from three sovereigns—the federal government, Oregon, and Washington, acting cooperatively.

18 The Gorge Commission and Clark County operate under <u>both</u> federal and state authority when

19 implementing the National Scenic Area Act. The National Scenic Area Act and Columbia River

20 Gorge Compact thus created a regional approach to resource protection and economic

---

[2] Codification of a compact in state statutes does not mean the compact is state law; rather one of the defining characteristics of an interstate compact as opposed to other forms of interstate cooperation is that states enact or authorize compacts by statute.  MICHAEL L. BUENGER, ET AL., THE EVOLVING LAW AND USE OF INTERSTATE COMPACTS 2d ed. 35, 36, 205 (ABA Publ'g 2016).

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                              6

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1  development in the Gorge that could not have been achieved by the federal government or the

2  individual states acting alone.

3      In upholding the constitutionality of the National Scenic Area Act under the Commerce

4  and Property clauses of the U.S. Constitution, the Ninth Circuit characterized the Columbia

5  River Gorge Compact as "an innovative solution to a difficult interstate land management

6  problem." *Columbia River Gorge United v. Yeutter*, 960 F.2d at 114–15.

7      **C.      The Columbia River Gorge National Scenic Area Management Plan**

8      The National Scenic Area Act requires the Gorge Commission and the U.S. Secretary of

9  Agriculture to jointly develop a management plan governing all land use and development in the

10  National Scenic Area, 16 U.S.C. §§ 544d and 544f, and specifies standards for the Management

11  Plan. 16 U.S.C. § 544d(d).[3] The U.S. Secretary of Agriculture, through the U.S. Forest Service,

12  develops the Management Plan policies and standards for the special management areas of the

13  National Scenic Area and transmits them to the Gorge Commission, 16 U.S.C. § 544f, which

14  must incorporate them into the Management Plan without change. 16 U.S.C. § 544d(c)(5). *See*

15  *also* Shoal Decl. at 3. The Oregon Court of Appeals held that the U.S. Forest Service has

16  "exclusive authority" over the special management area provisions of the Management Plan.

17  *Friends of the Columbia Gorge v. Columbia River Gorge Comm'n*, 171 P.3d 942, 958, 215 Or.

18  App. 557 (2007). The Gorge Commission then adopts the comprehensive Management Plan,

19  and the U.S. Secretary of Agriculture must review the Management Plan and concur that it is

---

[3] Unlike the only other interstate comprehensive land use planning compact, the Tahoe Regional Planning Compact, the Columbia River Gorge Compact does not require the Gorge Commission and U.S. Forest Service to consider existing state and local standards when developing the Management Plan. *See* Tahoe Regional Planning Compact, art. V(c)(5) (available at http://www.trpa.org/bi-state-compact/).

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1  consistent with the National Scenic Area Act's standards for the plan and the purposes of the

2  Act. 16 U.S.C. § 544d(f). The Gorge Commission adopted the Management Plan in 1991 and

3  the U.S. Secretary of Agriculture concurred in early 1992. (Shoal Decl. at 5).

4  **D.  Land Use Ordinances Required to Implement the Management Plan**

5  The National Scenic Area Act requires the six counties in the National Scenic Area to

6  adopt and implement land use ordinances consistent with the Management Plan for non-federal

7  lands. 16 U.S.C. §§ 544i, 544*l* & 544n(c). The Gorge Commission must find each county's

8  ordinance consistent with the Management Plan for the non-special management areas and make

9  a tentative finding of consistency for the ordinance as applied to special management areas. 16

10  U.S.C. § 544e(b). The U.S. Secretary of Agriculture must then review and concur with the

11  Commission's tentative determination of consistency, unless the Secretary determines the

12  ordinance is not consistent with the Management Plan. 16 U.S.C. §§ 544f(h)–(j). This is not a

13  perfunctory action; the National Scenic Area Act mandates an affirmative determination.

14  Clark County first adopted its National Scenic Area Unified Development Code in 1996.

15  The Gorge Commission approved it as consistent with the Management Plan and the U.S.

16  Secretary of Agriculture granted concurrence. (Shoal Decl. at 5).

17  The Ninth Circuit stated, "Under the Act, and the resulting Compact, all land use within

18  the Columbia River Gorge Scenic Area, whether private, federal or local, will be consistent with

19  the management plan." *Columbia River Gorge United v. Yeutter*, 960 F.2d at 112.

20  **III.  RESPONSE TO BNSF'S ARGUMENTS**

21  **A.  Criteria for a Preliminary Injunction**

22  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

23  *v. NRDC*, 555 U.S. 7, 24 (2008). Here, BNSF seems to seek a "prohibitory" style injunction—

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                    8

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1  the purpose of which is to freeze the positions of the parties until the court can hear the case on

2  the merits—to preserve the status quo. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*

3  *Co.*, 571 F. 3d 873, 879 (9th Cir. 2009) (internal quotes and citations omitted). The status quo

4  "means the last, uncontested status which preceded the pending controversy." *Id*. When a

5  preliminary injunction would greatly alter the status quo, such relief must be "viewed with

6  hesitancy and carry a heavy burden of persuasion." *See 3570 E. Foothill Blvd., Inc. v. City of*

7  *Pasadena*, 912 F. Supp. 1257, 1260 (C.D. Cal. 1995).

8      The problem is that BNSF does not seek to preserve the status quo. The last uncontested

9  status of the parties preceding the pending controversy existed before BNSF began construction

10 without first obtaining a National Scenic Area review and approval. In contrast to preserving the

11 status quo, BNSF seeks a preliminary injunction against Clark County so that it can continue

12 construction without National Scenic Area review and approval—so that it can continue altering

13 the status quo.[4] The status quo can only be preserved if the court <u>denies</u> the injunction. If the

14 court grants the injunction, it will allow BNSF to continue substantially and irreversibly altering

15 the physical and legal landscape in the National Scenic Area.

16      To obtain a preliminary injunction, the moving party must establish that: (1) it is likely to

17 succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary

18 relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.

19 *Winter v. NRDC*, 555 U.S. at 20. This brief describes that BNSF is not likely to succeed on the

20 merits. Clark County and Friends of the Columbia Gorge's briefs address the other factors.

---

[4] Viewed in this manner, BNSF's request may be considered a mandatory injunction. The standard for a mandatory injunction is "doubly demanding . . . [BNSF] must establish that the law and facts *clearly* favor [its] position, not simply that [it] is likely to succeed. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                    9

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

**B.    Preemption is not the applicable law; harmonizing two federal laws is the applicable law.**

BNSF did not present an accurate picture of applicable law to the court.  Specifically, BNSF did not mention that the STB has interpreted the ICCTA and concluded, "nothing in section 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes."  *Town of Ayer*, 2001 STB LEXIS 435 at *19–20 (May 1, 2001).  Nor did BNSF mention that the Ninth Circuit cited the STB's interpretation with approval in *Ass'n of Am. R.R.s*, 622 F.3d at 1098.

BNSF also did not present the applicable legal standard that the Surface Transportation Board explained:

> Of course, whether a particular Federal environmental statute, local land use restriction, or other local regulation is being applied so as to not unduly restrict the railroad from conducting its operations, or unreasonably burden interstate commerce, is a <u>fact-bound</u> question. Accordingly, individual situations need to be reviewed individually to determine the impact of the contemplated action on interstate commerce and whether the statute or regulation is being applied in a discriminatory manner, or being used as a pretext for frustrating or preventing a particular activity, in which case the application of the statute or regulation would be preempted.

*Town of Ayer*, 2001 STB LEXIS 435 at *20–21 (emphasis added).  And BNSF did not mention to the court that the Ninth Circuit also follows this approach.  Citing *Town of Ayer* with approval, the Ninth Circuit stated, "If an apparent conflict exists between ICCTA and a *federal* law, courts must strive to harmonize the two laws, giving effect to both laws if possible."  *Ass'n of Am. R.R.s*, 622 F.3d at 1097 (emphasis in original).  Preemption is not the standard—harmonizing the two federal laws and their application on an individualized "fact-bound" basis is the standard.

Instead of framing its arguments to the applicable "harmonize" standard, BNSF stated that Clark County implements only state and local law, which the ICCTA preempts.  In support, BNSF argues (1) the Gorge Commission is a state agency, (2) thus, the Management Plan is only

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                                      10

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1 state law; (3) and thus Clark County's National Scenic Area Unified Development Code is state

2 law; and (4) the Gorge Commission's final opinion and order in another case (which is on appeal

3 in the Oregon Court of Appeals) involving Union Pacific Railroad Company is "unsound."[5]

4 However, properly understood, the National Scenic Area Act, prior court decisions, and other

5 related authorities compel a conclusion that Clark County is implementing the National Scenic

6 Area Act. Here, where BNSF did not present the applicable law from the STB and Ninth

7 Circuit; the most basic relevant facts, such as the location of the project partially within a special

8 management area, design of the project, possible avoidance measures and mitigation where

9 avoidance is not possible; the applicable National Scenic Area standards from Clark County's

10 National Scenic Area Unified Development Code; or any fact-bound conflicts, Clark County

11 cannot yet harmonize the two federal laws and thus the court cannot conclude that BNSF is

12 likely to succeed on the merits.

13 **C.     Clark County is implementing the federal National Scenic Area Act.**

14 **1.     The Gorge Commission is not a state agency.**

15      BNSF argues that the Gorge Commission is a state agency (Dkt. # 8 at p. 21–23) in its

16 attempt to demonstrate that the Management Plan is mere state law. BNSF is incorrect. BNSF's

17 arguments that the Columbia River Gorge Compact, the *Seattle Master Builders* case, and state

18 and federal statutory provisions suggest the Commission is a state agency are not compelling.

---

[5] The National Scenic Area Act requires the Gorge Commission to hear appeals of county decisions relating to the implementation of the National Scenic Area Act. 16 U.S.C. § 544m(a)(2). The Gorge Commission resolved an appeal arising from a Wasco County, Oregon decision involving Union Pacific Railroad Company. As briefed below, the Gorge Commission's final order is on appeal in the Oregon Court of Appeals and this court should reject BNSF's attempt to collaterally attack it here and should refrain from any suggestion about the correctness of the Gorge Commission's decision.

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                              11

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1   Federal, Oregon and Washington courts have heard these arguments in past cases and have

2   routinely concluded that the Gorge Commission is anything _other_ than a state agency.  For

3   example, the United States District Court for the Eastern District of Washington stated that the

4   Gorge Commission is "a bi-state compact between Oregon and Washington." *Klickitat County*

5   *v. Columbia River Gorge Comm'n*, 770 F. Supp. 1419, 1422 (E.D. Wash. 1991), and that the

6   commission is a "regional agency. *W. Birkenfeld Trust v. Bailey*, 827 F. Supp. 651, 654 (E.D.

7   Wash. 1993).  In resolving a contested motion by the Gorge Commission's to intervene in a prior

8   case in this court, this court stated that the commission "is an interstate compact created by

9   Washington and Oregon," and "is neither a federal nor state agency." *GLW Ventures, LLC v.*

10  *U.S. Dep't. of Agriculture, U.S. Forest Service*, No. C14-5806-RBL (W.D. Wash. Dec. 16, 2014)

11  (Dkt. # 12, Order Granting Motion to Intervene).  The Washington Court of Appeals indicated,

12  by analogy, that the commission is a "political subdivision independent of the states that

13  conceived it." *Tucker v. Columbia River Gorge Comm'n*, 867 P.2d 686, 689, 73 Wash. App. 74

14  (1994).  The Oregon Court of Appeals stated that the commission is a "bistate entity," *Murray v.*

15  *State*, 124 P.3d 1261, 1263, 203 Or. App. 377 (2005), and then significantly amplified that

16  holding again in *Columbia River Gorge Comm'n v. Hood River County*, 152 P.3d 997, 1003, 210

17  Or. App. 689 (2007), also using the term "hybrid" to describe the commission.

18          The *Hood River County* case contains the most comprehensive discussion rejecting a

19  nearly identical attempt (and some of the same arguments) to characterize the Gorge

20  Commission as a state agency.

21          . . . As an initial matter, we disagree with defendants that an interstate commission
22          created with the consent of Congress is an agency of the State of Oregon.
23          Defendants reason that the Commission can only be either a federal entity or a
24          state entity--and that, because the Scenic Area Act specifies that the Commission
25          is not a federal agency, *see* 16 U.S.C. § 544c(a)(1)(A), it must be a state agency.
26          In defendants' view, because the Commission would not exist but for Oregon's

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                          12

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1    enactment of a state statute, ORS 196.150, the Commission is a creature of state
2    law and, thus, a state agency.

4    Contrary to defendants' understanding, ORS 196.150 does not purport to create a
5    state agency. Rather, it ratifies Oregon's compact with Washington to establish "a
6    regional agency known as the Columbia River Gorge Commission" to carry out
7    the provisions of the compact and of the Scenic Area Act. ORS 196.150, Art. 1a
8    (emphasis added). Regional agencies created by interstate compacts are generally
9    recognized to be neither categorically state nor federal in nature; instead, they are
10   hybrids. *See Murray v. State of Oregon*, 203 Or. App. 377, 379, 124 P.3d 1261
11   (2005) ("The commission is a *bistate entity* made up of representatives of the
12   states of Oregon and Washington." (emphasis added [by Oregon Court of
13   Appeals])); *cf. Hess v. Port Authority Trans-Hudson*, 513 U.S. 30, 40, 115 S. Ct.
14   394, 130 L. Ed. 2d 245 (1994) ("The States, as separate sovereigns, are the
15   constituent elements of the Union. Bistate entities, in contrast, typically are
16   creations of three discrete sovereigns: two States and the Federal Government.").
17   Thus, to the extent that defendants' arguments rest on the premise that the
18   Commission itself is a "state agency," we reject that premise.

20   *Columbia River Gorge Comm'n, v. Hood River County*, 152 P.3d at 1003.  BNSF did not present

21   these authorities in its briefing.  Instead, it relied heavily on President Reagan's signing

22   statement when he signed the National Scenic Area Act, which is not persuasive authority. *See*

23   *Yakima Valley Memorial Hosp. v. Washington State Dep't of Health*, 654 F.3d 919, 934 (9th Cir.

24   2011) (questioning whether "a presidential signing statement could establish an unmistakably

25   clear legislative intent").

26        Federal and state courts have already concluded that the Gorge Commission is bi-state

27   agency, a hybrid, created by authority from the federal government and the two states for the sole

28   purpose of implementing the National Scenic Area Act.  This court should follow that precedent.

29        **2.    The Columbia River Gorge National Scenic Area Management Plan is not**
30               **state law.**

32        BNSF acknowledges that the National Scenic Area Act and Columbia River Gorge

33   Compact are federal law (Dkt. # 8 at p. 23), but to avoid the conclusion that Clark County is

34   implementing these federal authorities, BNSF argues that the National Scenic Area Management

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                    13

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1   Plan is only state law.  However, contrary to BNSF's arguments, the courts that have had to

2   characterize the Management Plan have concluded that it is not state law and have not treated it

3   like state law.  For example, in *Klickitat County v. State*, 862 P.2d 629, 71 Wash. App. 760

4   (1993), the Washington Court of Appeals considered whether the state would be liable for

5   takings claims for Klickitat County's implementation of the Management Plan and concluded,

6   "[O]nce two states enter into a compact with congressional approval, the compact is considered

7   an instrument of federal law.  The Commission's land management plan and the act's provisions

8   relative to the plan are federally mandated, and do not constitute a state program." *Id*. at 634

9   (emphasis added).  In *Columbia River Gorge Comm'n v. Hood River County*, 152 P.3d at 1004,

10  the Oregon Court of Appeals concluded that the entire Management Plan was required by federal

11  law, and specifically rejected as "artificially and implausibly crabbed" a defendant's argument

12  that the National Scenic Area Act requires the Management Plan include only the nine

13  "precatory" standards set forth in the National Scenic Area Act.  *Id*. at 1003–04.  In *Friends of

14  the Columbia Gorge v. Columbia River Gorge Comm'n*, 171 P.3d at 969, *aff'd in relevant part*,

15  213 P.3d 1164, 1189, 346 Or. 366 (2009), the Oregon Court of Appeals and the Oregon Supreme

16  Court both applied the federal *Auer* deference regime to the Commission's interpretation of the

17  Management Plan.  *Auer* could not have applied if the Management Plan were just state law.

18          BNSF did not present these authorities to the court.  Instead, BNSF argues that because

19  the Gorge Commission is not a federal agency, the Management Plan cannot be federal law.  But

20  this is wrong on the facts and wrong on the law.  First the facts.  BNSF did not inform the court

21  that a portion of its project is within the Gates of the Columbia River Gorge Special Management

22  Area that Congress designated in the National Scenic Area Act. 16 U.S.C. § 544b(b). (Shoal

23  Decl. at 2–3).  As discussed above in Part II, the U.S. Secretary of Agriculture wrote the

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                           14

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1  development standards applicable to development projects in the special management areas; the

2  National Scenic Area Act expressly requires that Clark County "shall" implement the National

3  Scenic Area land management standards that the Secretary of Agriculture creates, 16 U.S.C. §

4  544f(h); the Secretary of Agriculture must review and concur that Clark County's ordinance as

5  applied to land in the special management areas is consistent with the Management Plan, 16

6  U.S.C. § 544f(j); the Secretary of Agriculture reserved specific development review tasks for

7  U.S. Forest Service staff in the Management Plan, (Shoal Decl. at 4); and the Forest Service has

8  a role in reviewing BNSF's project, (Shoal Decl. at 4–5). There is much more federal agency

9  involvement in the Management Plan and review of BNSF's project than what BNSF presented

10  to the court, such that the court can readily conclude that Clark County would be implementing

11  federal law (in partnership with the U.S. Forest Service) in reviewing BNSF's project.

12  Regarding the law, in addition to the prior Commission cases briefed above, courts have

13  concluded that plans and regulations enacted by an interstate compact agency are themselves

14  federal law. The issue does not arise very often, but every court that has expressly considered

15  the question has reached that conclusion.[6] In *Rhode Island Fisherman's Alliance v. R.I. Dep't of*

16  *Envtl. Mgmt.*, 585 F.3d 42 (1st Cir. 2009), the court expressly stated that the Atlantic States

17  Marine Fisheries Commission's interstate fishery management plan for American Lobster that

18  included retroactive control dates is federal law, *id*. at 49, and thus presented a federal question

19  whether the plan required the state to insert retroactive control dates into the state regulatory

---

[6] These cases are documented in the only two current books on interstate compact law. *See* MICHAEL L. BUENGER, ET AL., THE EVOLVING LAW AND USE OF INTERSTATE COMPACTS 2d ed. 96 (ABA Publ'g 2016); JEFFREY B. LITWAK, INTERSTATE COMPACT LAW: CASES AND MATERIALS 3d ed. 158–59 (Semaphore Press 2018). BNSF addressed these cases in its collateral attack on the Gorge Commission's final order and opinion in the Union Pacific appeal (Dkt. # 8 at p. 26–28).

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                    15

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

scheme, *id*. at 50.  BNSF argues that the case is inapposite because that the court concluded the fishery management plan was a "state regulatory scheme." (Dkt. # 8 at p. 27), but this is an incorrect statement of the case.

Similarly, two federal district courts have concluded that a Tahoe Regional Planning Agency (TRPA, another interstate compact agency) order, ordinance, and plan are federal law. In *City of South Lake Tahoe v. Tahoe Reg'l Planning Agency*, 664 F. Supp. 1375, 1378 (E.D. Cal. 1987), the court concluded that a TRPA order limiting the number of flights over the Tahoe basin and thus to the South Lake Tahoe airport was a "federally authorized regulatory scheme" and thus was effective in a conflicts analysis with the federal Airline Deregulation Act.  In *Lake Tahoe Watercraft Rec. Ass'n v. Tahoe Reg'l Planning Agency*, 24 F. Supp. 2d 1062, 1068–69 (E.D. Cal. 1998), the court concluded that a TRPA ordinance prohibiting discharge of unburned fuel and oil by carbureted two-stroke engines is federal law and that characterization of the ordinance was "a threshold issue bearing on a number of plaintiff's claims." *Id*. at 1068.  In *Stephans v. Tahoe Reg'l Planning Agency*, 697 F. Supp. 1149, 1152 (D. Nev. 1988), another court characterized the TRPA's 1987 Regional Plan as federal law, and thus dismissed the plaintiff's state constitutional claims arising under that plan.

The *Tahoe Watercraft Rec. Ass'n* case discusses at length why the TRPA ordinance is federal law, rejecting some of the arguments that BNSF makes in its briefing, such as BNSF's argument that the National Scenic Area Management Plan is state law because the Supreme Court's *Lake Country Estates* decision suggests the Commission acts under color of state law:

> Contrary to plaintiffs' contention, *Lake Country Estates* does not define the legal status of ordinances duly adopted by TRPA pursuant to the Compact. There, the Court held that when enacting an ordinance, TRPA and its officers act "under color of state law" for purposes of § 1983. It does not follow, however, that such an ordinance constitutes state law.

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                          16

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1    Although TRPA's governing board members may act under color of state law
2    when they enact the Ordinance, the Ordinance itself is the product of the mandate
3    of the Compact. And it is the mandate of the Compact which in turn informs the
4    Ordinance with federal character.
5
6    *Lake Tahoe Watercraft Rec. Ass'n*, 24 F. Supp. 2d at 1068–69 (internal citations omitted).

7    The three TRPA cases cited above are especially apt because the National Scenic Area

8    Act borrowed heavily from lessons from the TRPA Compact. Bowen Blair, Jr., 17 ENVTL. L. at

9    968. BNSF argues these TRPA cases are inapposite because TRPA's actions were not "adopted

10   by a federal official" as required by the *Ass'n of Am. R.R.s* case. (Dkt. # 8 at p. 27–28). But the

11   *Ass'n of Am. R.R.s* case did not require federal "adoption," rather it only noted that upon federal

12   "approval," a state implementation plan under the Clean Air Act has the force and effect of

13   federal law[7] and the plan in that case had not yet been approved. *Ass'n of Am. R.R.s*, 622 F.3d at

14   1098. The Clean Air Act's requirement for federal approval cannot be generalized to all other

15   situations as demonstrated by the TRPA cases cited above in which the courts held the TRPA

16   plan and regulations were federal even though the TRPA Compact does not require federal

17   approval of TRPA plans and regulations. Nevertheless, as discussed above, the National Scenic

18   Area Act does require federal approval of the National Scenic Area Management Plan (called

19   "concurrence"), and the U.S. Secretary of Agriculture did concur.

20   BNSF's additional arguments that the Management Plan is only state law pursuant to 16

21   U.S.C. §§ 544c(a)(1)(A) and 544c(a)(1)(B) are without context. In context, the court can readily

22   understand that these provisions were not added to characterize the Management Plan as state

---

[7] *See also Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1091 (9th Cir. 2007) (Once the EPA approves a State Implementation Plan (SIP) under the Clean Air Act, the requirements of the SIP become federal law); *Trustees for Alaska v. Fink*, 17 F.3d 1209, 1210 n.3 (9th Cir. 1994) (same); *Arkansas v. Oklahoma*, 503 U.S. 91, 110 (1992) (same under Clean Water Act).

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                                    17

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

law, but were necessary to create the Gorge Compact and the intended cooperative federalism program, and to avoid legal issues that arise when there is confusion about whether the Gorge Commission is subject to specific federal agency requirements.

Section a(1)(A), specifying that the Commission is not a federal agency,[8] addressed two contemporary legal issues. First, it responded to claims raised in *Seattle Master Builders v. Pac. Nw. Elec. Power and Conserv. Planning Council*, 786 F.2d 1359 (9th Cir. 1986). That case had been filed in 1983 and was argued in 1985 and raised a question whether the members of the interstate compact council needed to be appointed pursuant to the Appointments Clause in the U.S. Constitution. Second it responded to a question of what federal laws governing federal agencies, such as NEPA, should apply to interstate compact agencies. *See, e.g., Cal. Tahoe Reg'l Planning Agency v. Sahara Tahoe Corp.*, 504 F. Supp. 753 (D. Nev. 1980) (concluding NEPA did not apply).

Section 544c(a)(l)(B), specifying that the states must provide the Commission and counties authority to carry out the Gorge Compact and National Scenic Area Act, simply ensured that all three sovereigns took the necessary actions to create the regulatory structure. The cooperative federalism approach in the National Scenic Area Act could not work as planned if Washington and Oregon did not also provide authority to the Commission and counties.

The Commission anticipates that BNSF will cite to *Skamania County v. Woodall*, 16 P.3d 701, 104 Wash. App. 525 (2001), in response to the Gorge Commission's points and authorities

---

[8] BNSF's suggestion that the Gorge Commission must be a state agency because it is not a federal agency commits the either-or fallacy that several scholars have noted about interstate compacts. For example, one scholar asked, "[H]ow are [interstate compacts] to fit into a doctrinal reality based on a federalist conception of dual—but no more than dual—sovereignty?" Note, *Charting No Man's Land: Applying Jurisdictional and Choice of Law Doctrines to Interstate Compacts*, 111 HARV. L. REV. 1991, 1996 (1998).

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                    18

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

1  because parties in other litigation often do.[9]  Before becoming too invested in this case, the court

2  should know that no court has followed *Woodall's* holding.  In *Woodall*, the Washington Court

3  of Appeals concluded that the Commission must interpret its rules consistent with Washington

4  common law applicable outside the National Scenic Area.  But for recognizing that the National

5  Scenic Area Act and Gorge Compact are federal law, *id*. at 705, the reasoning was objectively

6  incorrect.  The Commission will be prepared at oral argument to respond to arguments that

7  BNSF raises about *Woodall* and questions from the court; however, a couple of examples of the

8  Washington Court of Appeals' faulty reasoning will illustrate that *Woodall* is not sound

9  precedent in this matter.  First, the Washington Court of Appeals cited *Seattle Master Builders*,

10  786 F.2d at 1371 (which stated, "A state can impose state law on a compact organization only if

11  the compact specifically reserves its right to do so."), but the Washington Court of Appeals

12  reversed that presumption that state law does not apply, stating "Nothing in the [Columbia River

13  Gorge] Compact or the [National Scenic Area] Act can be interpreted as a clearly expressed

14  intention of the Legislature to give the Commission the authority to ignore Washington common

15  law when interpreting a Washington State county ordinance." *Woodall*, 16 P.3d at 705.  The

16  court did not explain why it used a reverse presumption or how it reached a different conclusion

17  from a different division of the Washington Court of Appeals, and the U.S. District Court for the

18  Eastern District of Washington, both of which applied the correct *Seattle Master Builders*

19  presumption to the Gorge Commission.  *Klickitat County v. State*, 862 P.2d at 634; *Klickitat*

20  *County v. Columbia River Gorge Comm'n*, 770 F. Supp. at 1426.

---

[9] As well, BNSF's arguments about the status of the Commission and its characterization of the Management Plan and Clark County's ordinance as state law largely use the same reasoning as the Washington Court of Appeals used in *Woodall*.

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

Second, the Washington Court of Appeals reasoned that Congress intended the Gorge Commission to apply state law because, "Congress approved the Compact, knowing it expressly provided that 'the provisions of [the Columbia River Gorge Compact] hereby are declared to be the law of this state. . . .' RCW 43.97.015." *Woodall*, 16 P.3d at 706 (brackets in original). This is an incorrect factual statement. Congress approved the Gorge Compact in advance of the states drafting it. 16 U.S.C. 544c(a)(1) (consent to "an agreement described in sections 544 to 544"); *Columbia River Gorge United v. Yeutter*, 960 F.2d at 114 (affirming validity of advance consent to the compact under the Compact Clause). Congress did not review or approve the states final text and nowhere in the National Scenic Area Act did Congress mandate the "declared to be the law of this state" language as the Washington Court of Appeals decision stated. And, again, the Washington Court of Appeals did not explain why it chose not to follow a prior decision of the Washington Court of Appeals, which concluded that the Compact and all actions pursuant to the compact do <u>not</u> constitute a state program. *Klickitat County v. State*, 862 P.2d at 634.

In short, *Woodall* was not decided correctly; it did not follow established precedent; and courts do not follow it to characterize the National Scenic Area standards as state and local law.

### 3. BNSF is mistaken that Clark County's National Scenic Area Unified Development Code does not implement federal law.

BNSF next argues that Clark County's National Scenic Area Unified Development Code is state law that the ICCTA preempts. But again, BNSF does not present the court with relevant persuasive precedent. For example, in *Columbia River Gorge Comm'n v. Hood River County*, the Oregon Court of Appeals concluded, ". . . the land use ordinances enacted by Wasco, Hood River, and Multnomah counties in accordance with, and to implement, the Commission's management plan are land use regulations that are "required to comply with federal law . . . ." 152 P.3d at 1004.

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

1    Instead of presenting this precedent, BNSF only discusses *Tucker v. Columbia River*

2    *Gorge Comm'n*, 867 P.2d 686, 73 Wash. App. 74 (1994) for the proposition that the Commission

3    acts under the authority of state law.  Unlike the *Klickitat County v. State* and *Hood River County*

4    cases cited above, in which the claims at issue required the court to characterize the nature of the

5    Management Plan and county National Scenic Area ordinances (and rejected characterizing them

6    as state law), in *Tucker*, the court only needed to determine what standard of review it would use

7    to review a permitting decision of the Gorge Commission.[10]  The Washington Court of Appeals

8    chose Washington state law[11] while citing the *Klickitat County v. State* case, suggesting that

9    choosing the standard of review to use differs from broadly characterizing the National Scenic

10   Area permitting regulations as state law.

11       There is no distinction between the National Scenic Area Management Plan and Clark

12   County's National Scenic Area Unified Development Code for the purpose of characterizing

13   Clark County's code as federal, state or local.  Both are required by the National Scenic Area

14   Act. 16 U.S.C. §§ 544e and 544f(h).  Both incorporate the U.S. Secretary of Agriculture's

15   standards for special management areas without change.  16 U.S.C. § 544d(c)(5)(A).  Both

16   require and have received the U.S. Secretary of Agriculture's concurrence.  Both implement the

17   National Scenic Area Act.  Clark County's National Scenic Area Unified Development Code is

18   no less a part of the overall federal land management program simply because local officials

19   implement it.

---

[10] *Tucker* arose in the early 1990s while the Commission was issuing permitting decisions under
interim authority in the National Scenic Area Act, 16 U.S.C. §544h.  In this posture, the
Commission's decision was like a county's National Scenic Area permitting decision today.
[11] Use of state administrative procedure is not unusual for interstate compact agencies, especially
where a compact addresses a regional rather than national policy issue, and even when a compact
is federal law pursuant to *Cuyler v. Adams*.  *See* BUENGER, ET AL., *supra* note 6, at 139–50.

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323

**4. BNSF improperly collaterally attacks a prior Gorge Commission order.**

BNSF's final points argue that the Gorge Commission's 2017 appeal decision[12] arising from a Wasco County, Oregon decision involving Union Pacific Railroad Company is "unsound." The Gorge Commission's final opinion and order is on appeal in the Oregon Court of Appeals. *Union Pacific R.R. Co. v. Wasco County*, No. A166300 (Or. App. Nov. 7, 2017) (petition for judicial review filed). BNSF is not a party in that appeal and its arguments are an improper collateral attack on the Commission's decision. That case involves a different set of facts and thus a different application of law. This court should reject BNSF's arguments about the correctness of the Gorge Commission's decision and abstain from any judgment about the correctness of the Gorge Commission's decision. Indeed, this court is without jurisdiction to resolve that matter. 16 U.S.C. §§ 544m(b)(4) and (6) (jurisdiction for appeals of Gorge Commission decisions in state court); *see also GLW Ventures LLC v. U.S. Dep't of Agriculture*, 261 F. Supp. 3d 1098, 1101 (W.D. Wash. 2016) (noting that the court stayed GLW's federal case pending resolution of GLW's appeal of the Gorge Commission's decision in state court).

## IV. UNION PACIFIC IS NOT LIKELY TO SUCCEED ON THE MERITS

As discussed above, the STB and Ninth Circuit have both concluded that the ICCTA preemption does not apply to the application of federal environmental laws, even when state and local officials implement that federal law. These cases further establish that the applicable analysis is whether the federal environmental law at issue can be harmonized with federal railroad law. As explained in Clark County's Response Brief in this matter, BNSF knew about this obviously applicable authority, but did not to present it to the court.

---

[12] The National Scenic Area Act requires the Gorge Commission to hear and resolve appeals of county actions related to the implementation of the Act. 16 U.S.C. § 544m(a)(2).

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

1        Virtually all of BNSF's arguments and case law addresses preemption of state and local

2    law. But as discussed above, that is not the situation in this case. Clark County is implementing

3    a federal environmental statute when it requires BNSF to obtain National Scenic Area review

4    and approval, and especially for a project in a special management area, where the U.S.

5    Secretary of Agriculture wrote the regulations that Clark County must adopt, concurred with

6    Clark County's National Scenic Area Unified Development Code, and shares the role of

7    reviewing development proposals. Clark County is implementing a federal environmental

8    statute. It is implementing the Columbia River Gorge National Scenic Area Act.

9        The real issue in this case is whether the National Scenic Area authorities and federal

10   railroad law can be harmonized. The STB has explained that this is a merits argument, an as

11   applied, "fact-bound" analysis, *Town of Ayer*, 2001 STB LEXIS 435 at *20. Because BNSF has

12   not provided Clark County with such facts to determine whether the National Scenic Area

13   authorities and federal railroad law can be harmonized, it is premature for the court to do so in

14   this proceeding. BNSF cannot credibly argue that there is no way to ever harmonize the

15   National Scenic Area authorities with federal railroad law because the counties and the Gorge

16   Commission have done so for every one of the eight previous BNSF projects in the National

17   Scenic Area since Congress enacted the ICCTA (Andring Decl. at 1–2), resulting in eight

18   approvals for BNSF.

19   **V.    CONCLUSION**

20       Properly understood, this case involves the relationship between federal railroad statutes

21   and another federal environmental law—the National Scenic Area Act. Because the ICCTA

22   preemption does not extend to other federal law, BNSF is unlikely to succeed on the merits of its

23   sole legal theory that the ICCTA completely preempts the National Scenic Area authorities.

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)          23

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA 98672
(509) 493-3323

1   Because the Gorge counties and Gorge Commission have successfully harmonized National

2   Scenic Area standards with federal railroad law for every prior BNSF project since 1995, BNSF

3   is unlikely to succeed on the merits.  Furthermore, because BNSF seeks to change the status quo

4   rather than preserve it, a preliminary injunction is not appropriate.  For all these reasons, the

5   court must deny BNSF's motion for preliminary injunction.

6
7           Respectfully submitted, December 4, 2018.
8
9                                                   */s/ Jeffrey B. Litwak*
10                                                  Jeffrey B. Litwak, WSBA No. 31119
11                                                  Columbia River Gorge Commission
12                                                  57 NE Wauna Ave.
13                                                  P.O. Box 730
14                                                  White Salmon, WA  98672
15                                                  Telephone: (509) 493-3323 x222
16                                                  Email: jeff.litwak@gorgecommission.org
17                                                  Attorney for Intervenor Columbia River
18                                                            Gorge Commission

RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
(C18-5926-BHS)                                24

Columbia River Gorge Commission
57 NE Wauna Ave., P.O. Box 730
White Salmon, WA  98672
(509) 493-3323