THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BNSF RAILWAY COMPANY,

                              Plaintiff,

     v.

CLARK COUNTY, WASHINGTON;
MITCH NICKOLDS, in his official capacity
as Director of Community Development of
Clark County; KEVIN A. PRIDEMORE, in
his official capacity as Code Enforcement
Coordinator of Clark County; and
RICHARD DAVIAU, in his official
capacity as County Planner of Clark County,

                            Defendants;

COLUMBIA RIVER GORGE
COMMISSION,

       Proposed Intervenor-Defendant;

FRIENDS OF THE COLUMBIA
GORGE, INC.,

       Proposed Intervenor-Defendant.

No.: 3:18-cv-5926

PLAINTIFF BNSF RAILWAY
COMPANY'S REPLY IN SUPPORT
OF MOTION FOR PRELIMINARY
INJUNCTION

**NOTING DATE: December 19, 2018**

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   BNSF IS HIGHLY LIKELY TO SUCCEED ON THE MERITS .....................2

    A.   ICCTA Preempts the County Development Code ..................................2

        1.   ICCTA preempts state and local laws imposing permitting processes that can be used to block rail construction ...................2

        2.   Defendants' claim that the Gorge Act is an environmental law is incorrect and irrelevant .....................................................4

        3.   Defendants' call for harmonization is misplaced.........................6

            (a)   Preemption analysis applies unless the county ordinance has the force and effect of federal law ...............................6

            (b)   The Gorge Act establishes that the county ordinance is state law, and that it does not have the force and effect of federal law...............................................................................7

    B.   Even if the County Development Code Were Subject to Harmonization, ICCTA Would Still Forbid Its Application Here.....................................12

III.  DEFENDANTS' SUNDRY PROCEDURAL ARGUMENTS LACK MERIT...............15

IV.   A PRELIMINARY INJUNCTION IS WARRANTED ...................................16

V.    CONCLUSION.....................................................................................18

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION                   -i-
USDC CASE NO. 3:18-CV-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*American Trucking Associations v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ........................................................................17

*Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015).........................................16

*Association of American Railroads v. South Coast Air Quality Management District*,
  622 F.3d 1094 (9th Cir. 2010) ............................................................... *passim*

*BNSF Railway v. California Department of Tax & Fee Administration*,
  904 F.3d 755 (9th Cir. 2018) ...........................................................................2

*California Pharmacists Association v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ..........................................................................18

*Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*,
  450 U.S. 311 (1981)...........................................................................................13

*City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998) ...........................................2, 5, 6

*Columbia River Gorge United-Protecting People & Property v. Yeutter*,
  960 F.2d 110 (9th Cir. 1992) .........................................................................4, 8

*Douglas v. Independent Living Center of Southern California, Inc.*,
  565 U.S. 606 (2012)...........................................................................................18

*Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082 (9th Cir. 2003) .......................................15

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ............................................6, 12

*Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991)..............................10

*Gabriel v. Alaska Electrical Pension Fund*, 773 F.3d 945 (9th Cir. 2014) ....................16

*Graham County Soil & Water Conservation District v. U.S. ex rel. Wilson*,
  559 U.S. 280 (2010)...........................................................................................13

*Green Mountain Railroad Corp. v. Vermont*, 404 F.3d 638 (2d Cir. 2005) ....................2

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994)....................................8

*Kische USA LLC v. Simsek*, No. C16-0168JLR,
  2018 WL 620493 (W.D. Wash. Jan. 28, 2018).............................................17

*Mead Corp. v. Tilley*, 490 U.S. 714 (1989)...............................................................14

*National Meat Ass'n v. Harris*, 565 U.S. 452 (2012) ....................................................16

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-ii-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*New York Susquehanna & Western Railway Corp. v. Jackson*,
  500 F.3d 238 (3d Cir. 2007)................................................................3

*Norfolk Southern Railway v. City of Alexandria*, 608 F.3d 150 (4th Cir. 2010) ............................3

*Oregon Coast Scenic Railroad v. Oregon Department of State Lands*,
  841 F.3d 1069 (9th Cir. 2016) ......................................................2, 5, 12

*Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Department of
  Environmental Management*, 585 F.3d 42 (1st Cir. 2009) ......................................11

*Sackett v. Environmental Protection Agency*, 566 U.S. 120 (2012) ................................18

*Seattle Master Builders Association v. Pacific Northwest Electric Power &
  Conservation Planning Council*, 786 F.2d 1359 (9th Cir. 1986)................................10

*Swinomish Indian Tribal Community v. BNSF Railway Co.*,
  No. C15-543-RSL, 2015 WL 9839703 (W.D. Wash. Sept. 11, 2015) ............................15

*U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016) ............................18

*Union Electric Co. v. Environmental Protection Agency*,
  515 F.2d 206 (8th Cir. 1975) ..........................................................8, 9

### STATE CASES

*Columbia River Gorge Commission v. Hood River County*,
  210 Or. App. 689 (2007)...............................................................11

*Concerned Land Owners of Union Hill v. King County*,
  64 Wash. App. 768 (1992)..............................................................16

*Klickitat County v. State*, 71 Wash. App. 760 (1993)..........................................11

*Skamania County v. Columbia River Gorge Commission*, 144 Wash. 2d 30 (2001) ....................10

### FEDERAL REGULATORY CASES

*Boston & Maine Corp. & Town of Ayer, MA*, 5 S.T.B. 500 (2001) ...................................*passim*

*CSX Transportation, Inc.*, FD 34662, 2005 WL 1024490 (STB May 3, 2005) .......................3, 4

*U.S. Environmental Protection Agency*,
  FD 35803, 2014 WL 7392860 (STB Dec. 29, 2014)................................2, 3, 4, 14

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION          -iii-
USDC CASE NO. 3:18-CV-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**STATE REGULATORY CASE**

*Union Pacific Railroad v. Wasco County Board of Commissioners,*
   CRGC NO. COA-16-01 (Sept. 8, 2017) ................................................................5

**FEDERAL STATUTES**

Clean Air Act, Amendments, Pub. L. No. 101-549, 104 Stat. 2399 (1990) ..................10, 11, 12

   42 U.S.C. § 7407 .................................................................................................12

   42 U.S.C. § 7413 .................................................................................................11

   42 U.S.C. § 7661a(a) ..........................................................................................10

Columbia River Gorge National Scenic Area Act, Pub. L. No. 99-663,
   100 Stat. 4274 (1986), 16 U.S.C. §§ 544–544p ........................................... *passim*

   16 U.S.C. § 544(c) ................................................................................................4

   16 U.S.C. § 544a ................................................................................................12

   16 U.S.C. § 544c(a)(1) .......................................................................................12

   16 U.S.C. § 544c(a)(1)(A) ..................................................................................10

   16 U.S.C. § 544c(c) ............................................................................................11

   16 U.S.C. § 544d(d) ...........................................................................................13

   16 U.S.C. § 544e(b) .....................................................................................2, 4, 8

   16 U.S.C. § 544e(b)(3) .........................................................................................9

   16 U.S.C. § 544e(d) ..............................................................................................8

   16 U.S.C. § 544f(f) ...............................................................................................8

   16 U.S.C. § 544f(h)–(i) ........................................................................................9

   16 U.S.C. § 544f(j) ...............................................................................................9

   16 U.S.C. § 544f(j)–(k) ........................................................................................9

   16 U.S.C. § 544m(a)(1) ......................................................................................10

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-iv-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

16 U.S.C. § 544m(b)(1)(A) .................................................................10

16 U.S.C. § 544m(b)(1)(B) ...........................................................10, 11

16 U.S.C. § 544m(b)(6) .....................................................................10

16 U.S.C. § 544*o*(a)–(c) ....................................................................13

16 U.S.C. § 544*o*(d) ...........................................................................8

16 U.S.C. § 544*o*(f) ............................................................................4

National Environmental Policy Act § 102, 42 U.S.C. § 4332 ...................4

**STATE STATUTES**

Clark County Code § 40.240.430(A)(12) .............................................3

Clark County Code § 40.240.440(A) ...................................................3

**FEDERAL RULE AND REGULATION**

36 C.F.R. § 1.2(b) .............................................................................13

W.D. Wash. Local Rule 7(b)(3) .........................................................17

**OTHER AUTHORITIES**

*Columbia River Gorge: Hearing Before the S. Committee on Commerce, Science,
& Transportation*, 98th Cong. 34 (1983) .........................................14

132 Cong. Rec. 33,207 (1986) ...........................................................13

Management Plan for the Columbia River Gorge National Scenic Area (Aug. 2016)...............8, 9

National Park Service, Director's Order #25: Land Protection (Jan. 19, 2001) .........................13

22 Weekly Comp. Pres. Docs. 1576 (Nov. 17, 1986).............................10

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

–v–

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## I.    __INTRODUCTION__

2        Defendants take the sweeping position that counties within the Columbia Gorge have

3   unfettered discretion to regulate or veto interstate railroad construction.  That is not the law:  The

4   County Development Code imposes a permitting requirement that by its nature could be used to

5   deny BNSF the ability to conduct rail operations.  ICCTA categorically preempts such

6   requirements, and Defendants do not argue otherwise.

7        The matter should end there, but instead, Defendants assert that Congress's enactment of

8   the Gorge Act—which simply gave congressional consent to a state compact coordinating land-

9   use management and economic development in the Gorge—entirely exempts local permitting

10  schemes from ICCTA's broad preemption clause.  That argument has no foundation in the Gorge

11  Act, and it bucks Ninth Circuit precedent.  Defendants' central claim is that this Court must

12  "harmonize" the Gorge Act with ICCTA because the Code was enacted to "implement" the Act.

13  The Ninth Circuit has squarely rejected that argument, holding that ICCTA's preemption clause

14  applies with full force to local restrictions enacted to implement federal law.  *Ass'n of Am.*

15  *Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094 (9th Cir. 2010) (*AAR*).  Defendants

16  also argue that county ordinances like the County Development Code should be treated as

17  federal, not state, law.  But that argument founders against the Act itself, which envisions county

18  ordinances with the force and effect only of state law.  Even if harmonization were the proper

19  analysis, ICCTA would still displace the Code.  Harmonization is necessary only when two Acts

20  of Congress actually conflict.  Here, Congress did not mention—much less authorize or direct—

21  local rail regulation in the Gorge Act.  And ICCTA does not tolerate the patchwork that would

22  result from giving local ordinances precedence over national rail policy.

23        BNSF has shown irreparable harm and satisfied the other preliminary injunction factors.

24  The Construction Project is necessary to relieve a bottleneck on BNSF's tracks and avoid delays.

25  Defendants would put BNSF to the dilemma of submitting to their veto authority or risking

26  enforcement action.  That is precisely the burden on interstate commerce that ICCTA forbids.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-1-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## II.  **BNSF IS HIGHLY LIKELY TO SUCCEED ON THE MERITS**

2

### A.  **ICCTA Preempts the County Development Code**

3

Defendants do not dispute that ICCTA categorically preempts local land use laws that

4

authorize what the County seeks here:  a veto over rail construction.  To avoid this settled rule,

5

Defendants assert that the Gorge Act is a federal environmental statute and the County

6

Development Code is a federal law.  The former argument is both irrelevant and incorrect.  The

7

latter would require this Court to disregard Congress's clearly expressed intent that county "land

8

use ordinances" are just that: local ordinances, promulgated without the need for approval by any

9

federal official, and enforceable only as state law.  16 U.S.C. § 544e(b).

10

### 1.  **ICCTA preempts state and local laws imposing permitting processes that can be used to block rail construction**

11

12

The County Development Code purports to impose a permitting requirement on rail

13

construction and is therefore "categorical[ly]" preempted by ICCTA.  *U.S. Envtl. Prot. Agency*,

FD 35803, 2014 WL 7392860, at *6 (STB Dec. 29, 2014) (*U.S. EPA*).  ICCTA preempts state

14

and local "requirements that, by their nature, could be used to deny a rail carrier's ability to

15

conduct rail operations."  *Id.*  Accordingly, the Ninth Circuit and the Surface Transportation

16

Board (STB)—whose ICCTA preemption decisions offer "guidance ... to which [courts] owe

17

*Chevron* deference"—have repeatedly held that states and localities may not impose

18

preclearance or permitting requirements on railroads.  *AAR*, 622 F.3d at 1097; *see BNSF Ry. v.

19

*Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 760 (9th Cir. 2018); *Or. Coast Scenic R.R. v. Or.

20

*Dep't of State Lands*, 841 F.3d 1069, 1077 (9th Cir. 2016); *City of Auburn v. United States*, 154

21

F.3d 1025, 1029–31 (9th Cir. 1998); *Boston & Maine Corp. & Town of Ayer, MA*, 5 S.T.B. 500,

22

at *5 (2001).  Such local laws are categorically preempted because they impermissibly assert

23

local authority to veto interstate rail operations, and because the permitting process itself enables

24

"a local body to delay construction of railroad facilities almost indefinitely."  *Green Mountain

25

*R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d Cir. 2005); *see Or. Coast*, 841 F.3d at 1076.

26

Defendants suggest that *Town of Ayer* holds that whether a law "unduly restrict[s] the

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-2-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   railroad" is a "fact-bound question" that precludes a preliminary injunction.  County Br. 1;

2   Comm'n Br. 1, 10, 23; Friends Br. 2–3.  That argument misreads the STB's precedent:

3   Innocuous regulations can, in context, be subtly applied in ways that unreasonably burden

4   interstate commerce.  But Defendants' position here is not subtle; it is a frontal attack on rail

5   construction, and therefore it is *categorically* forbidden.  "[ICCTA] categorically prevents states

6   or localities from intruding into matters that are directly regulated by the Board (e.g., ...

7   construction ... )."  *U.S. EPA*, 2014 WL 7392860, at *6.  In particular, "state or local permitting

8   or preclearance requirements, including zoning ordinances and environmental and land use

9   permitting requirements, are categorically preempted as to any facilities that are an integral part

10  of rail transportation."  *Id.*  Such "[c]ategorically preempted actions are preempted regardless of

11  the context or rationale for the action."  *Id.* (internal quotation marks omitted).

12         Worse yet, the County Development Code facially discriminates against railroads,

13  imposing special conditions on rail activity.  In general, ICCTA permits state rules only if "they

14  are rules of general applicability."  *AAR*, 622 F.3d at 1098.  For example, nondiscriminatory

15  health and safety rules, such as fire and electric codes, are generally not preempted, *CSX Transp.,*

16  *Inc.*, FD 34662, 2005 WL 1024490, at *4 (STB May 3, 2005), but state laws that single out

17  railroads are preempted.  *See N.Y. Susquehanna & W. Ry. v. Jackson*, 500 F.3d 238, 254 (3d Cir.

18  2007); *Norfolk S. Ry. v. City of Alexandria*, 608 F.3d 150, 160 (4th Cir. 2010).  Here, the Code

19  subjects railroads to greater restrictions than roads—for example, requiring that track be placed

20  to minimize impact on agricultural and forest lands.  *Compare* Clark County Code

21  § 40.240.440(A), *with id.* § 40.240.430(A)(12).  Defendants proclaim this disfavored treatment

22  of railroads:  The Commission has recently emphasized to BNSF's counsel the very aspects of

23  the Code that are uniquely more restrictive of railroads than other forms of transportation.

24  Suppl. Lynch Decl. Ex. A at 2, Dkt. No. 51.  And the Friends have made clear that they oppose

25  any additional rail traffic in the area.  Lang Decl. ¶ 10, Dkt. No. 25.  ICCTA forbids such

26  targeted local discrimination against interstate rail activity.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-3-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 2.    Defendants' claim that the Gorge Act is an environmental law is incorrect and irrelevant

Defendants would brush this analysis aside by labeling the Gorge Act as an "environmental statute[]" supposedly entitled to special solicitude in the ICCTA analysis. Comm'n Br. 10; County Br. 9.  Defendants' premise and conclusion are both incorrect.

**a.**    The Gorge Act is not an environmental statute; it is congressional consent for state land-use statutes.  The Act and the Gorge Compact contemplate that the Commission will coordinate land-use decisions in pursuit of the Act's dual goals of enhancement of Gorge resources and economic development.  *See, e.g.*, 16 U.S.C. §§ 544(c), 544e(b); *Columbia River Gorge United-Protecting People & Prop. v. Yeutter*, 960 F.2d 110, 111 (9th Cir. 1992).  The Act refers dozens of times to "land use"—but it speaks of the "environment" in only one subsection cross-referencing a law that actually is a federal environmental law.  16 U.S.C. § 544*o*(f) (citing National Environmental Policy Act § 102, 42 U.S.C. § 4332).  The Act sets no generally applicable process or substantive standards to protect the environment, in the manner of the Clean Water Act or the Clean Air Act.  Instead, the Act simply creates a framework for federal, regional, and local entities to coordinate to manage Gorge resources and govern development in the area.

**b.**    Labeling the Gorge Act as "environmental" is ultimately irrelevant, because the law challenged here (the County Development Code) is unquestionably a "land use ordinance," 16 U.S.C. § 544e(b)—in other words, a zoning law.  Whatever policy might be behind a zoning law, the relevant question for ICCTA preemption is whether the law grants a local veto over railroad activity, or whether it instead applies neutrally across industries without conferring veto power.  *AAR*, 622 F.3d at 1098; *U.S. EPA*, 2014 WL 7392860, at *7; *CSX Transp.*, 2005 WL 1024490, at *3.  The Code is preempted because it empowers the County to decide that a particular plot of land is unsuitable for rail use and deny the rail carrier the right to construct facilities or conduct operations; the fact that the County might have "environmental" considerations in making that decision is irrelevant.  As the STB explained in *Town of Ayer*,

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-4-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   "state and local permitting or preclearance requirements *(including environmental requirements)*

2   are preempted because by their nature they ... giv[e] the local body the ability to deny the carrier

3   the right to construct facilities or conduct operations."  5 S.T.B. 500, at *5 (emphasis added);

4   *accord City of Auburn*, 154 F.3d at 1029–31 (holding "environmental" permitting requirement

5   preempted by ICCTA); *Or. Coast*, 841 F.3d at 1077 (same).

6       **c.**    Interactions between BNSF and the County over the Construction Project leave

7   no doubt that the County is threatening the very interference with interstate commerce that

8   ICCTA exists to prevent.  BNSF offered to follow the County's regulatory scheme in every way

9   *except by seeking a permit*—because ICCTA prohibits the County from requiring a permit.

10  BNSF repeatedly expressed a desire to "work[] collaboratively" with the County, Lynch Decl.

11  Ex. B at 1, Dkt. No. 9, by "sharing development plans," "using local best management

12  practices," "implementing appropriate precautionary measures," meeting with the County "to

13  address local concerns," and "submitting environmental monitoring or testing information," *id*.

14  Ex. F at 4.  These are the activities the STB commends in *Town of Ayer*, 5 S.T.B. 500, at *7.  But

15  the County rebuffed those overtures, stating that any discussions would not be "productive"

16  absent BNSF's submission of a permit application.  Daviau Decl. Ex. B at 1, Dkt. No. 41-2.

17  Thus, it is quite evident that the County does not simply seek to ensure that BNSF observes its

18  policies, or that the County receives full information about the Project.  Instead, the County is

19  asserting the authority to veto railroad construction.  *Cf. Union Pac. R.R. v. Wasco Cty. Bd. of*

20  *Comm'rs*, CRGC NO. COA-16-01 (Sept. 8, 2017) (affirming Wasco County's denial of Union

21  Pacific Railroad Company's application for a permit to construct a stretch of mainline track in

22  the Gorge).  That veto is precisely what ICCTA forbids.

23      Allowing enforcement of the County's permitting scheme—and those of the other Gorge

24  counties—would create an unworkable patchwork for railroads and would enable numerous

25  localities to block rail construction or otherwise discriminate against railroads.  For example, a

26  single short section of the Construction Project in the form depicted on Defendants' map would

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-5-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    be subject to *three different land use regimes*. *See* Shoal Decl. ¶ 2, Dkt. No. 37; *id.* Ex. A at 2;

2    *id.* Ex. B. Such balkanized land use rules would straitjacket railroads rather than allow them to

3    respond to the public's demand for their services. ICCTA outlaws such assertions of local

4    control at the expense of the national interest in the free flow of commerce.

### 3.     Defendants' call for harmonization is misplaced

#### (a)    *Preemption analysis applies unless the county ordinance has the force and effect of federal law*

Defendants contend that the enforceability of the County Development Code turns not on

whether that ordinance is preempted by ICCTA, but on whether the Code can be harmonized

with ICCTA. That is incorrect. The need to harmonize arises when two *Acts of Congress*, both

with the equal force and effect of federal law, allegedly regulate the same subject. If so, the

court must assume that Congress, having enacted both statutes, did not overlook an

irreconcilable conflict between the two. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018).

But here, the County would enforce a local land use ordinance—not any Act of Congress—

against BNSF. When a party contends that a federal statute prohibits a local government from

enforcing local law against it, the proper analysis is preemption: BNSF need seek a permit only

if the ordinance is not preempted. *City of Auburn*, 154 F.3d at 1029.

In response, Defendants concoct an argument that the County ordinance "implements"

the Gorge Act (through a number of intermediate steps), and therefore this Court must harmonize

the Gorge Act with ICCTA to decide the status of the County Development Code. *See* Comm'n

Br. 2, 20–21; County Br. 10. For this, Defendants rely upon the STB's statement, taken out of

context, that "nothing in [ICCTA] is intended to interfere with the role of state and local agencies

in implementing Federal environmental statutes." Comm'n Br. 10 (citing *Town of Ayer*, 5 S.T.B.

500, at *5). But County ordinances do not "implement[]" any particular federal policy set forth

in the Gorge Act. *See infra*, p. 8. And more importantly, the Ninth Circuit in *AAR* rejected

Defendants' exact federal-law-by-association argument—explaining along the way why the

snippet from *Town of Ayer* does not bear the weight Defendants would place on it.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-6-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

In *AAR*, the rail industry challenged as preempted by ICCTA a state air-quality District's rules that were intended to be "part of California's proposed overall 'state implementation plan' [SIP] under the federal Clean Air Act [CAA]." 622 F.3d at 1096. The CAA provides that state-law rules, including permitting requirements, included in a SIP are accorded the force and effect of federal law if they are approved by the federal Environmental Protection Agency (EPA). But the challenged rules had not yet been submitted to EPA. *Id.* The District unsuccessfully argued—as Defendants attempt again here—that even though the rules were local law, their fate nonetheless hinged on harmonizing the CAA and ICCTA because "the District was implementing the CAA's regulatory scheme." Appellants Br. 41, *AAR*, No. 07-55804, 2008 WL 3974098 (9th Cir. July 14, 2008). The Ninth Circuit found it "irrelevant" that the district was exercising authority assigned by the CAA "to the states and localities." 622 F.3d at 1098.

Rather, what mattered was that the District's rules had only "the force and effect of state law." *Id.* Referring to the STB statement on which Defendants attempt to rely here, the Ninth Circuit explained that "to the extent that state and local agencies promulgate *EPA-approved* statewide plans under federal environmental laws (such as 'statewide implementation plans' under the Clean Air Act), ICCTA generally does not preempt those regulations because it is possible to harmonize ICCTA with those *federally recognized regulations*." *Id.* (emphasis added; citing and quoting *Town of Ayer*). But because the District's rules had not yet been federally adopted and had the force only of state law, "there [was] no authority for the courts to harmonize the District's rules with ICCTA," and "ICCTA preempts those rules." *Id.*

Under *AAR*, the fact that County Development Code is enacted within the framework of the Gorge Act does not trigger the harmonization analysis that is reserved for reconciling two federal laws directly at issue. Thus, ordinary preemption analysis applies unless the Code is federal law or has "the force and effect of federal law." *AAR*, 622 F.3d at 1098.

> *(b)      The Gorge Act establishes that the county ordinance is state law,
> and that it does not have the force and effect of federal law*

The County Development Code is *state*, not federal, law because [1] the Code is enacted

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-7-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   by a county government, not Congress; [2] the Gorge Act does not require federal agency

2   approval of the Code; and [3] the Code is enforceable by the County, not any federal agency.

3       **i.**     The Gorge Act pervasively reflects Congress's intention that County ordinances

4   have the force only of state law.  The Gorge Compact is an exercise of Washington's and

5   Oregon's prerogatives, "as separate sovereigns," to enter into agreements addressing regional

6   problems.  *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 40 (1994).  The Gorge Act's

7   provisions, including those about county land use ordinances, are merely the conditions upon

8   which Congress consented to the Compact, and to which Washington and Oregon agreed by

9   entering into the Compact.  *Yeutter*, 960 F.2d at 114; 16 U.S.C. § 544*o*(d).  The Act grants no

10  novel powers to counties; when counties promulgate land use ordinances under Section 544e(b),

11  they exercise only their existing state-law zoning authority.  And the Act leaves counties

12  extremely broad leeway in defining the content of land use ordinances.  Those ordinances need

13  only be consistent with the Management Plan, which the Act sketches only in broad terms:  The

14  Plan should allow development without "adversely affect[ing]" natural resources.  16 U.S.C.

15  §§ 544e(d), 544f(f).  And the Plan in turn allows counties to "vary from the policies and

16  guidelines in the Management Plan as long as the[ir] ordinances provide greater protection" for

17  natural resources.  Management Plan at IV-1-6 to -7.  In short, Congress did not authorize or

18  direct counties to address certain subjects, or require permits for certain activities.  Against that

19  backdrop, Defendants have a particularly heavy burden of demonstrating that the Gorge Act

20  nonetheless accords county ordinances the force and effect of federal law.

21      **ii.**    Defendants first contend that the County Development Code is "approved" by

22  federal officials and therefore has the "force and effect of federal law."  Comm'n Br. 17; Friends

23  Br. 7.  That argument fails under *AAR*.  There, the Ninth Circuit recognized that Congress may

24  provide that in certain circumstances, upon approval by a federal official, rules promulgated by a

25  state entity will have the "force and effect of federal law"—this is, they will be enforceable in the

26  same manner as federal law, by a federal agency in federal court.  *AAR*, 622 F.3d at 1096; *Union*

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-8-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Elec. Co. v. EPA*, 515 F.2d 206, 211 (8th Cir. 1975).  But the County Development Code fails both conditions:  It is neither approved by a federal official, nor enforceable as federal law.

In both General Management Areas (GMAs) and Special Management Areas (SMAs), the Commission—not a federal official—has sole final authority to approve a land use ordinance promulgated by a county.[1]  Defendants do not contest that point with respect to the portions of the County Development Code governing the GMA in which BNSF's project is located.  County Br. 5; 16 U.S.C. § 544e(b)(3).  With respect to the SMA, Defendants assert that the Forest Service "approves" the relevant county ordinances.  Friends Br. 6.  But that is not what the Gorge Act says.  The Act envisions that a county will promulgate land use ordinances for SMAs, which the Commission will then review for consistency with the Management Plan.  16 U.S.C. § 544f(h)–(i).  The Secretary of Agriculture (through the Forest Service) then reviews the ordinance and may "concur" that the ordinance is consistent with the Management Plan.  This review, moreover, is limited; the Secretary asks only if the land use ordinance is "consistent with" the Management Plan, 16 U.S.C. § 544f(j)—which the Forest Service interprets to mean "not contradictory," Shoal Decl. Ex. E at 1.  This is a low bar indeed, for land use ordinances can depart from the Management Plan if they provide greater protection for natural resources, Management Plan at IV-1-6 to -7.  More importantly, Defendants omit to mention (Comm'n Br. 8; Friends Br. 6) that after Secretarial review, the *Commission* retains final approval authority, as it may approve the ordinance even if the Secretary declines to concur.  16 U.S.C. § 544f(j)–(k).

Inasmuch as Congress clearly expected that the Commission—not the Secretary—would have final approval authority over county ordinances in both GMAs and SMAs, the Commission's status is what matters.  Although the Commission emphasizes that it is a "bi-state" or "regional" agency, Comm'n Br. 12–13, the relevant question is whether the Commission is a *federal* agency.  The Commission cites nothing suggesting that it is a part of the federal Executive Branch—and overwhelming evidence shows the Commission is *not* federal:

---

[1] When it filed its opening brief, BNSF did not realize that part of the Construction Project is in an SMA.  That does not materially change the analysis for the reasons stated in the text.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926                                     -9-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  The Gorge Act expressly so provides, 16 U.S.C. § 544c(a)(1)(A); the President so stated in

2  signing the Gorge Act, 22 Weekly Comp. Pres. Docs. 1576 (Nov. 17, 1986); and if the

3  Commission were a federal agency, it would be unconstitutionally composed under the

4  Appointments Clause.  *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 882 (1991); BNSF

5  Opening Br. 14–17.  Defendants fail even to acknowledge that the Ninth Circuit has held that an

6  entity is a state "compact entity," rather than a federal agency, when it is "an operational body

7  established by reciprocal [state] legislation whose effectiveness is conditioned upon binding

8  legislative commitments by the states."  *Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power*

9  *& Conservation Planning Council*, 786 F.2d 1359, 1363 (9th Cir. 1986).  That standard is clearly

10  satisfied here.  BNSF Opening Br. 13–15.

11  In all events, the Gorge Act makes clear that county land use ordinances never attain the

12  force and effect of federal law because they never become enforceable by a federal agency in

13  federal court.  Despite Defendants' mantra that the land use ordinances have "the force and effect

14  of federal law," they never explain where the Gorge Act gives them that special status.  That is

15  because the Gorge Act contains no such provisions.  The counties and the Commission

16  administer the ordinances in the first instance, 16 U.S.C. § 544m(a)(1) (administrative remedies);

17  *id.* § 544m(b)(1)(B) (judicial remedies), with appeal available to the Commission and then

18  exclusively to state court, *id.* § 544m(b)(6); *see Skamania Cty. v. Columbia River Gorge*

19  *Comm'n*, 144 Wash. 2d 30, 59 (2001).  No federal agency or court is given a role.

20  The Gorge Act stands in stark contrast to the CAA, which provides [1] "it shall be

21  unlawful" *as a matter of federal law* to operate an emissions source without the permit required

22  by a SIP, 42 U.S.C. § 7661a(a), and [2] EPA may enforce approved SIPs by issuing

23  administrative penalties or by filing suit in federal court, 42 U.S.C. § 7413.  The Gorge Act does

24  *not* make violation of a land use ordinance unlawful under federal law.  And land use ordinance

25  enforcement is conspicuously absent from the list of enforcement actions that the Gorge Act

26  commits to the Attorney General of the United States, *compare* 16 U.S.C. § 544m(b)(1)(A)

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-10-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   (Attorney General suits) *with id.* § 544m(b)(1)(B) (Commission suits).  Although the Gorge Act

2   gives the Secretary of Agriculture certain other responsibilities, it gives the Secretary no role in

3   administering or enforcing county land use ordinances, even in SMAs.[2]  If county ordinances had

4   the force of federal law, Congress would have made their violation unlawful under federal law, it

5   would have provided for federal enforcement, and it would have supplied federal-court

6   jurisdiction.[3]  It did none of those things in the Gorge Act.

7       **iii.**     Defendants also suggest that because the Management Plan is federal law, and

8   county ordinances must be consistent with the Plan, they too must be federal law.  Even

9   accepting the premise that some part of the Plan is federal law, Defendants' conclusion does not

10  follow and is contrary to *AAR*.  *See* 622 F.3d at 1098 (district rules required to be consistent with

11  federal law lacked force of federal law until approved by EPA and federally enforceable).

12  Indeed, the very case on which the Commission relies (Br. 15)—*Rhode Island Fishermen's*

13  *Alliance, Inc. v. Rhode Island Department of Environmental Management*, 585 F.3d 42 (1st Cir.

14  2009)—disproves its argument:  There, the court held that a challenge to a state regulation

15  implementing a federal management plan under an interstate compact was properly heard in

16  federal court, not because the state regulation was federal law, but because the challenge

17  necessarily implicated the federal management plan.  *Id.* at 47–52.  That elaborate jurisdictional

18  reasoning was wholly unnecessary if the state regulation was itself federal law.  Yet Defendants

19  persist in urging this Court to regard the county Code as federal law.

20  [2] The Commission notes (Br. 15) that the Forest Service consults on enforcement of SMA land-use ordinances for issues of particular federal interest.  Shoal Decl. ¶ 6.  The Gorge Act allows

21  such assistance, *e.g.*, 16 U.S.C. § 544c(c), but general permission for a federal agency to lend a

22  hand with local enforcement cannot negate federal preemption of local law in a particular case.

23  [3] Defendants cite no cases to the contrary, instead misdescribing various inapposite state-court cases that did not concern the meaning of the Gorge Act.  *Klickitat Cty. v. State*, 71 Wash. App.

24  760 (1993), held only that the State would not be *liable under state law* for a county ordinance because the County did not act at the State's "direction or control."  *Columbia River Gorge*

25  *Comm'n v. Hood River Cty.*, 210 Or. App. 689 (2007), held that county ordinances are "required" by federal law *for purposes of a state taking statute*.  The Commission also relies (Br.

26  16) on district court decisions about the Tahoe regional compact, but as BNSF explained in its opening brief (at 19–20), those decisions predate, and are irreconcilable with, *AAR*.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-11-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Relatedly, Defendants make the startlingly broad argument that the County Development Code has the force and effect of federal law simply because the Gorge Act "required" counties to enact land use ordinances. *E.g.*, Comm'n Br. 21; Friends Br. 7. That argument too is squarely contrary to *AAR*. *See* 622 F.3d at 1098 (District rules were promulgated to become part of the SIP required by federal law, 42 U.S.C. § 7407, yet lacked force and effect of federal law). Indeed, staggering consequences would follow from Defendants' argument that mere compliance with a federal regulatory scheme transmogrifies local rules into federal laws. Any number of congressional enactments—federal spending programs, for example—contemplate, assume, or require state action. But such state action does not have the force and effect of federal law. County "land use ordinances" are exactly what their name suggests: local laws, subject to federal preemption, just like nearly every other local law.

### B. <u>Even if the County Development Code Were Subject to Harmonization, ICCTA Would Still Forbid Its Application Here</u>

Even if the Court sought to harmonize "the competing requirements of two federal laws, ICCTA and the [Gorge] Act," County Br. 9, BNSF would be highly likely to prevail.

**1.** There is no need to harmonize the Gorge Act and ICCTA because they do not "touch[] on the same topic." *Epic Sys.*, 138 S. Ct. at 1624. ICCTA reflects Congress's determination that railroads are a vital channel of interstate commerce that should be subject to exclusive federal control by the STB and free from balkanized local regulation. *Or. Coast*, 841 F.3d at 1072. The Gorge Act, by contrast, does not speak to railroad regulation, and simply provides congressional consent for a compact intended to protect the natural resources of the Gorge while also supporting the local economy. 16 U.S.C. §§ 544a, 544c(a)(1). The statutes are not at cross purposes: ICCTA's goal of railroad deregulation does not inherently conflict with the Gorge Act's dual goals of conservation and economic development.

Indeed, across the Nation, federal policies of conserving natural and scenic resources, on the one hand, and railroad construction within existing rights-of-way, on the other, generally do not conflict—and the Gorge is not an exception. For example, many miles of railroad tracks

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-12-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

have run through national parks for a century, situated on private rights-of-way.  The National Park Service (NPS) has no preclearance or permitting process for railroad projects on privately held lands within the parks.  *See* 36 C.F.R. § 1.2(b).  Instead, NPS seeks to regulate such uses cooperatively or, if necessary, by re-acquiring lands to reassert federal control.  *See* Nat'l Park Serv., Director's Order #25: Land Protection 3.1–3.2 (Jan. 19, 2001).  That cooperative process is compatible with ICCTA.  *Town of Ayer*, 5 S.T.B. 500, at *7.

The Gorge Act's text reinforces the absence of conflict between the Act and ICCTA.  The Gorge Act says *nothing* about railroads.  It grants no substantive authority to the Commission or to counties to regulate rail transportation, and it contains no substantive standards directing, encouraging, or even mentioning railroad regulation.  What standards it does contain—that the Plan shall generally allow development if it does not adversely affect the area's natural resources, 16 U.S.C. § 544d(d)—do not foreclose rail construction.  A preclearance system for railroad construction is in no sense required or even specifically contemplated by the Gorge Act.

Defendants would read intent into that silence, arguing that had Congress intended to protect railroads, it could have listed railroads in the "savings provisions" exempting certain activities from the Act's regulations.  Friends Br. 10–11 (citing 16 U.S.C. § 544*o*(a)–(c)).  But that silence is better read to signal Congress's expectation that county land use ordinances would not threaten to veto railroad construction—and if they did, would be preempted by ICCTA's predecessor, the Interstate Commerce Act, which had a preemptive sweep similar to ICCTA.  *See generally Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981).

The Friends' selective citation (Br. 9–10) to legislative materials fares no better.  The Friends first cites a single Senator's statement that railroad operation would continue in the Gorge "subject, as relevant, to the applicable standards in the act."  132 Cong. Rec. 33,207 (1986).  Such a floor statement is entitled to no "meaningful weight," *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 297 (2010), and is entirely consistent with an understanding that generally applicable, reasonable local regulations would not be

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-13-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    preempted and would therefore remain applicable.  The Friends next cites Congress's failure to

2    adopt additional, affirmative protections for rail transportation in the Gorge.  *Columbia River*

3    *Gorge: Hearing Before the S. Comm. on Commerce, Sci., & Transp.*, 98th Cong. 34 (1983).  But

4    "mute intermediate legislative maneuvers are not reliable" aids to statutory interpretation.  *Mead*

5    *Corp. v. Tilley*, 490 U.S. 714, 723 (1989) (internal quotation marks omitted).

6          Defendants' proposed "harmonization" is thus no harmonization at all.  The Court should

7    make no mistake:  Defendants' position is that counties within the Gorge area may outlaw

8    railroad construction entirely, not only burdening but stymieing interstate commerce.  Congress

9    could not have intended such a result—one totally at odds with longstanding national rail

10   policy—in merely giving its consent in the Gorge Act to coordinated land-use regulation by the

11   States.  At a minimum, accepting Defendants' position would subject railroads to a patchwork of

12   local regulations in the Gorge, directly undermining ICCTA's purpose of lifting the suffocating

13   effect of balkanized regulation.  In contrast, BNSF's position gives effect to both laws,

14   maintaining uniformity while leaving railroads subject to reasonable regulation that does not

15   exercise veto power over, or discriminate against, railroads.  *AAR*, 622 F.3d at 1097.

16         **2.**     Even accepting the most extreme form of Defendants' position—that the Gorge

17   Act, the Management Plan, and the County Development Code are an indivisible set of "National

18   Scenic Area authorities," Comm'n Br. 23, all with the force and effect of federal law—ICCTA

19   would still displace their direct regulation of railroads.

20         Unlike the Gorge Act itself, the County Development Code does conflict with ICCTA,

21   because it purports to require BNSF to submit a local permit application before engaging in

22   railroad construction, and to do so under land-use standards specific to railroads.  The STB

23   confronted an analogous situation in *U.S. EPA*, where it explained that federal "regulations

24   enacted under federal environmental statutes" may directly conflict with ICCTA, and if so, the

25   relevant rules "likely would be preempted by [ICCTA's preemption provision, 49 U.S.C.]

26   § 10501(b) *even under the harmonization standard*."  *U.S. EPA*, 2014 WL 7392860, at *7

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-14-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   (emphasis added).  In particular, the STB explained that a rule under the CAA governing

2   locomotive idling "likely cannot be harmonized with the purposes of § 10501(b)," "because of

3   the potential patchwork of regulations that could result." *Id.* at *8.  The County Development

4   Code presents precisely this concern.  Allowing the Code and other counties' land-use

5   ordinances to apply would create a patchwork of regulations even within just the small area

6   occupied by the Construction Project.  As in *U.S. EPA*, ICCTA forbids that result.[4]

7   **III.     DEFENDANTS' SUNDRY PROCEDURAL ARGUMENTS LACK MERIT**

8       **A.**     The County suggests (Br. 17–18) that the doctrine of primary jurisdiction should

9   require BNSF to proceed through the permitting process in order to argue that the permitting

10  process is preempted.  This Court need not pause over that Kafkaesque suggestion.  Invoking

11  primary jurisdiction would effectively decide the merits against BNSF by assuming that the

12  County and the Commission have authority to require a permit in the first place, thereby

13  inflicting precisely the injury that BNSF filed suit to prevent.  *See Eckard Brandes, Inc. v. Riley*,

14  338 F.3d 1082, 1087 (9th Cir. 2003) (primary jurisdiction does not apply where agency lacks

15  authority over question).  Whether ICCTA preempts land-use ordinances adopted by the County

16  is a purely legal question that this Court can and should decide, not the sort of technical question

17  for which deference to agency expertise might be appropriate.  *See Swinomish Indian Tribal*

18  *Cmty. v. BNSF Ry.*, No. C15-543-RSL, 2015 WL 9839703, at *2 (W.D. Wash. Sept. 11, 2015)

19  (refusing referral of ICCTA preemption issue to STB).

20      **B.**     Defendants insinuate that BNSF has irrevocably committed to the permitting

21  process because nearly three years ago, on a form provided to the Washington Department of

22  Ecology (not a party here), a BNSF contractor listed a Clark County land-use permit in the

23

24  _____

[4] The Commission suggests (Br. 2–3) that no conflict would arise if the County approves
25  BNSF's permit application, and urges the Court to await such a conflict.  But subjecting BNSF to
    the permitting process *in itself* conflicts with ICCTA.  The impermissible burden lies not the
    inconvenience of a single permit application, but rather in the task of complying with every local
26  permitting regime that might apply to a single project, and waiting for just one locality to deny a
    permit, thus threatening the entire project. *See Town of Ayer*, 5 S.T.B. 500, at *5.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-15-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

form's space to report "permits that will be needed." *See, e.g.*, County Br. 2–4, 6–7, 13–15;

McGowan Decl. Ex. A at 2, Dkt. No. 43-1.  Defendants do not elaborate on an estoppel

argument, and for good reason:  They offer no evidence that the County or the Commission ever

relied to its detriment on BNSF's statement on the form.  *See Gabriel v. Alaska Elec. Pension*

*Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (requiring that "the party asserting the estoppel ... must

rely on the ... conduct [of the party to be estopped] to his injury") (internal quotation marks

omitted).  Moreover, "equitable estoppel ... is inapplicable where the representations relied upon

are questions of law rather than questions of fact."  *Concerned Land Owners of Union Hill v.*

*King Cty.*, 64 Wash. App. 768, 778 (1992).  The statement that a Clark County permit "will be

needed" was at most a legal conclusion—and one that BNSF does not agree with.  More broadly,

the fact that BNSF has previously applied for Gorge permits for other projects is irrelevant.

BNSF's acquiescence in a preempted process in the past does not forfeit its rights today.

     **C.**     Defendants also argue that "Because BNSF seeks to change the status quo, it not

is [sic] entitled to a preliminary injunction."  Comm'n Br. 1.  That misconceives the role of a

preliminary injunction here:  BNSF is engaged in construction activity that is lawful under

ICCTA, and it is threatened with unlawful enforcement of the County Development Code.  "[The

Supreme Court] ha[s] long held that federal courts may in some circumstances grant injunctive

relief against state officers who are violating, or planning to violate, federal law."  *Armstrong v.*

*Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015); *see Nat'l Meat Ass'n v. Harris*, 565

U.S. 452 (2012) (affirming district court's preliminary injunction against preempted state law).

BNSF asks only for an order directing defendants to refrain from acting against it.

## IV.    <u>A PRELIMINARY INJUNCTION IS WARRANTED</u>

     Beyond the merits, the other preliminary injunction factors are amply met too.  Far from

"speculative," Friends Br. 13; County Br. 12, the harm that BNSF will suffer in the absence of an

injunction is concrete and irreparable.  The County and Commission have reserved their rights to

take enforcement action, including seeking abatement remedies, against BNSF during the

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-16-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

pendency of this case even though the new track is entering service. *See* Suppl. Lynch Decl. Ex. A. Such abatement actions would adversely affect BNSF's service. Before the Construction Project, a bottleneck between Washougal and Mt. Pleasant caused well-documented slowdowns in BNSF's service. *See* Kaitala Decl. ¶¶ 6–7, Dkt. No. 10; Mann Decl. ¶¶ 4–7.[5] Inclement weather had led to backups, and BNSF was unable to resolve those backups quickly due to the constrained capacity of the segment, which led to delays in delivering shipments to market. Mann Decl. ¶¶ 4–7; *id.* Ex. A. Without the capacity improvement expected from the Construction Project, *id.* ¶¶ 10–11, BNSF's customers will likely experience delays, threatening BNSF's goodwill with its customers. *See Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009). Moreover, for every day that the Construction Project is not available for use, BNSF will lose the ability to move a greater number of trains more quickly, efficiently, and reliably, Mann Decl. ¶¶ 12–14, and will incur higher fuel costs and emit more greenhouse gases, *id.* ¶ 15. These harms cannot be easily valued or compensated.

Curiously, the County cites BNSF's good-faith overtures at cooperation with the County, as evidence that BNSF will not suffer irreparable harm. County Br. 12–13. The STB has made explicit what should be obvious: Nondiscriminatory requirements such as information sharing do not undermine railroads' ability to operate, but requiring railroads to stop construction indefinitely while pursuing a costly and time-consuming permitting process does. *See Town of Ayer*, 5 S.T.B. 500, at *5 (ICCTA permits localities to require information sharing, but categorically prohibits exercise of veto power). Indeed, the County's blunt rejection of BNSF's offer to work collaboratively with the County outside of the permit process (*see* Daviau Decl. Ex. B) speaks volumes: The County wants a veto power. That veto threatens such great harm to

---

[5] To offer more detail on certain topics discussed in the Kaitala Declaration, BNSF provided the Mann Declaration to the County Defendants and the Friends before their responses to BNSF's motion were due. (The Commission filed its response early, just before BNSF circulated the declaration.) BNSF presents the Mann Declaration in support of its reply pursuant to LCR 7(b)(3) in response to Defendants' characterization of the record in their oppositions. *See Kische USA LLC v. Simsek*, No. C16-0168JLR, 2018 WL 620493, at *3 (W.D. Wash. Jan. 28, 2018).

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-17-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  the channels of interstate commerce that Congress outlawed it in ICCTA.

2       The balance of equities also supports restraining Defendants from enforcing the County

3  Development Code.  The County's only contrary suggestion is that BNSF somehow acted

4  wrongfully (or "insolently," County Br. 15) in beginning construction without a permit.  But that

5  argument is contrary to the basic principle that private parties may act on their understanding of

6  their legal rights, and when threatened with enforcement, they may seek judicial review.  *Sackett*

7  *v. EPA*, 566 U.S. 120, 124–27 (2012).  To require BNSF to pursue a permit first would vitiate the

8  very federal right it seeks to vindicate.  *Cf. U.S. Army Corps of Eng'rs v. Hawkes Co*., 136 S. Ct.

9  1807, 1815–16 (2016).  The public interest likewise supports enjoining enforcement of the Code

10  because Congress determined in ICCTA to preempt such permitting requirements.  *Cal.*

11  *Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852–53 (9th Cir. 2009) ("the interest of

12  preserving the Supremacy Clause is paramount"), *vacated on other grounds sub nom. Douglas v.*

13  *Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012).  Although Defendants emphasize the

14  public interest in protecting the Gorge's natural resources (Friends Br. 14–16), the Gorge Act

15  reflects no congressional determination that railroad use is inconsistent with that interest.  *See*

16  *supra*, pp. 3–4, 13–14.  Moreover, with construction largely complete, any concerns about

17  avoiding any undesirable consequences of construction have considerably diminished force.

18       Ultimately, holding the County's land-use ordinances preempted would be an entirely

19  unremarkable result: BNSF would be free to repair, construct, and operate rail lines within its

20  own right-of-way in the Gorge without prior permission of local authorities, just as it does across

21  the Nation, including in national parks.  BNSF would, of course, continue to cooperate with local

22  authorities, as it has offered to do here.  But it cannot be required to submit to a permitting

23  process that would severely restrict its operations, in direct conflict with ICCTA.

24  ## V.    CONCLUSION

25       For the foregoing reasons, the Court should preliminarily enjoin the Defendants from

26  taking any action to enforce the County Development Code against the Construction Project.

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION
USDC CASE NO. 3:18-CV-5926

-18-

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    Respectfully submitted.

2    DATED this 14th day of December, 2018.

3                                    K&L GATES LLP
                                     By _____/s/ James M. Lynch_____
4                                        James M. Lynch, WSBA #29492
                                     By _____/s/ J. Timothy Hobbs_____
5                                        J. Timothy Hobbs, WSBA #42665
                                         K&L Gates LLP
6                                        925 Fourth Avenue, Suite 2900
                                         Seattle, WA 98104
7                                        Telephone: (206) 623-7580
                                         Fax: (206) 623-7022
8                                        Jim.Lynch@klgates.com
                                         Tim.Hobbs@klgates.com
9
                                     By _____/s/ Barry Hartman_____
10                                       Barry Hartman (pro hac vice)
                                         K&L Gates LLP
11                                       1601 K Street, NW
                                         Washington, DC 20006-1600
12                                       Telephone: (202) 778-9000
                                         Fax: (202) 778.9100
13                                       Barry.Hartman@klgates.com

14                                   MUNGER, TOLLES & OLSON LLP
                                     By _____/s/ Benjamin J. Horwich_____
15                                       Benjamin J. Horwich (pro hac vice)
                                     By _____/s/ Allison M. Day_____
16                                       Allison M. Day (pro hac vice)
                                     By _____/s/ Andre W. Brewster III_____
17                                       Andre W. Brewster III (pro hac vice)
                                         Munger, Tolles & Olson LLP
18                                       560 Mission Street, Twenty-Seventh Floor
                                         San Francisco, CA 94105
19                                       Telephone: (415) 512-4000
                                         Fax: (415) 512-4000
20                                       Ben.Horwich@mto.com
                                         Allison.Day@mto.com
21                                       Andy.Brewster@mto.com

22                                   By _____/s/ Ginger D. Anders_____
                                         Ginger D. Anders (pro hac vice)
23                                       Munger, Tolles & Olson LLP
                                         1155 F Street NW, Seventh Floor
24                                       Washington, DC 20004
                                         Telephone: (202) 220-1100
25                                       Fax: (202) 220-2300
                                         Ginger.Anders@mto.com
26
                                     *Attorneys for Plaintiff BNSF Railway Co.*

PLAINTIFF BNSF RAILWAY COMPANY'S REPLY
IN SUPPORT OF PRELIMINARY INJUNCTION          -19-
USDC CASE NO. 3:18-CV-5926

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on December 14, 2018, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing

4

to the registered CM/ECF users in this case.

5

6

*/s/ J. Timothy Hobbs*

7

J. Timothy Hobbs, WSBA #42665
K&L Gates LLP

8

925 Fourth Avenue, Suite 2900
Seattle, WA 98104

9

Telephone: (206) 623-7580
Fax: (206) 623-7022

10

Tim.Hobbs@klgates.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26