UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>              Plaintiff,<br><br>   v.<br><br>CLARK COUNTY,<br><br>              Defendant. | CASE NO. C18-5926 BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S AND INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff BNSF Railway Company's ("BNSF") motion for summary judgment, Dkt. 62, and Defendant Clark County ("County"), Intervenor Defendant Columbia River Gorge Commission ("Gorge Commission"), and Intervenor Defendant Friends of the Columbia Gorge, Inc.'s ("Friends") cross-motions for summary judgment, Dkts. 70, 72, 75. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants BNSF's motion and denies the other motions for the reasons stated herein.

# I. PROCEDURAL HISTORY

On November 13, 2018, BNSF filed a complaint against the County and other individual county employees seeking a declaration that the "ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 ("ICCTA") preempts the permitting process and substantive requirements [the County] threaten to impose on BNSF." Dkt. 1.

On January 31, 2019, BNSF filed a motion for summary judgment. Dkt. 62. On February 21, 2019, the County, the Gorge Commission, and Friends (collectively "Defendants") responded and filed cross-motions for summary judgment. Dkt. 70, 72, 75. That same day, the Confederated Tribes and Bands of the Yakama Nation ("Tribes") filed a stipulated motion to file a brief as amici curiae. Dkt. 77. On February 25, 2019, the Court granted the stipulated motion and will consider the Tribes' brief. Dkt. 80. On March 14, 2019, BNSF replied. Dkt. 81. On March 27, 2019, the County replied. Dkt. 82. On March 28, 2019, the Gorge Commission and Friends replied. Dkts. 83, 84.

# II. FACTUAL BACKGROUND

A. Statutes

1. The ICCTA

In 1995, Congress passed the ICCTA in part with the purpose of expanding federal jurisdiction and preempting the regulation of railroads. *See* H.R. Rep. No. 104–311 at 95 (1995) ("[C]hanges are made to reflect the direct and complete preemption of State economic regulation of railroads."). In order for federal preemption to apply under the ICCTA, the activity in question must first fall within the statutory grant of jurisdiction to the Surface Transportation Board ("STB"), one of several federal agencies charged with

railroad regulation. 49 U.S.C. § 10501(a).  As modified by the ICCTA, 49 U.S.C. § 10501(a) provides in relevant part:

> (1) Subject to this chapter, the Board has jurisdiction over transportation by rail carrier that is—
>   (A) only by railroad; or
>   (B) by railroad and water [under specified circumstances].
> (2) Jurisdiction under paragraph (1) applies only to transportation in the United States between a place in—
>   (A) a State and a place in the same or another State as part of the interstate rail network . . . .

If the Board has jurisdiction under 49 U.S.C. § 10501(a), the question whether jurisdiction is exclusive—i.e., whether state regulation is preempted—is a separate question governed by 49 U.S.C. § 10501(b), which provides that "[t]he jurisdiction of the Board over . . . (1) transportation by rail carriers . . . and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive."

### 2. Columbia River Gorge National Scenic Area

In order to facilitate cooperative regional administration of the Columbia River Gorge, the States of Washington and Oregon entered into a bi-state compact known as the Columbia River Gorge Compact, codified at RCW § 43.97.015 and ORS § 196.150 ("Gorge Compact"), covering an area in the vicinity of the Columbia River known as the "Scenic Area," *see* 16 U.S.C. § 544b(a).  As required by the Constitution's Compact Clause, U.S. Const. art. I, § 10, cl. 3, Congress gave consent to the Gorge Compact in the Columbia River Gorge National Scenic Area Act, Pub. L. No. 99-663, 100 Stat. 4274

(1986), codified at 16 U.S.C. §§ 544–544p ("Gorge Act"); *see* 16 U.S.C. §§ 544c(a), 544o(d) (Congress's consent).

Congress provided that its consent was conditional on the inclusion of several provisions in the Gorge Compact. 16 U.S.C. §§ 544c(a), 544o(d). As relevant here, first, the Gorge Compact establishes the Commission under state law, Gorge Compact art. I.a, which "shall not be considered an agency or instrumentality of the United States for the purpose of any Federal law," 16 U.S.C. § 544c(a)(1)(A). Second, under Gorge Compact Article I.a, "the States of Oregon and Washington . . . provide to the Commission, . . . and the counties [including Clark County] under State law the authority to carry out their respective functions and responsibilities," 16 U.S.C. § 544c(a)(1)(B). Third, Oregon, Washington, and counties in the Scenic Area appoint the voting members of the Commission according to criteria set forth in the Gorge Compact. Gorge Compact art. II; *see* 16 U.S.C. § 544c(a)(1)(C). Fourth, the Commission adopts a management plan for the Scenic Area, *see* 16 U.S.C. § 544d, and each county in the Scenic Area (including Clark County) in turn "adopt[s] a land use ordinance consistent with the management plan," subject to the Commission's approval, 16 U.S.C. §§ 544e(b), 544f(h).

Oregon and Washington adopted as state law the terms on which Congress conditioned its consent. *See* Gorge Compact art. I.a (giving the Commission "the power and authority to perform all functions and responsibilities in accordance with" the Gorge Compact and the Gorge Act). Acting under the authority granted by state law, the Commission has developed a detailed management plan setting forth general guidelines for land management within the Gorge. *See* Management Plan for the Columbia River

Gorge National Scenic Area (Aug. 2016) ("Management Plan"). Although the Secretary of Agriculture ("Secretary") provides the guidelines for certain "Special Management Areas" within the Gorge, 16 U.S.C. §§ 544d(c)(4)–(5), 544f(e)–(f), federal involvement in the management plan is otherwise limited, *id.* § 544d(f)(1) (secretarial review to "concur"); *id.* § 544d(f)(3) (Commission may adopt plan even if Secretary does not concur).

In turn, Clark County, acting under authority granted by state law, RCW § 36.70A.040 (providing for city and county land-use planning), has enacted land use ordinances for portions of the Gorge within the County. *See* Clark County Code ch. 40.240. These ordinances are then reviewed and approved by the Commission for consistency with the management plan, *see* 16 U.S.C. §§ 544e(b)(3), 544f(h)–(i), again with limited federal involvement, *id*. § 544f(j) (Secretary reviews and must "concur" in the Commission's determination unless "the ordinance is inconsistent with" the management plan); *id*. § 544f(k) (Commission may approve ordinance even if Secretary does not concur).

As relevant here, the County Code establishes an administrative permitting and preclearance process for land use within the Scenic Area. "No building, structure or land shall be used and no building or structure shall be . . . erected, altered or enlarged . . . in the Clark County portion of the Columbia River Gorge National Scenic Area except for the uses listed in this chapter, when considered under the applicable procedural and substantive guidelines of this chapter." Clark County Code § 40.240.010.B.

B.  **Rail Operations**

Relevant to this matter, BNSF owns a portion of railroad track between Washougal, Washington and Mount Pleasant, Washington. The relevant track is on a right-of-way in Clark County within the Scenic Area, on land that BNSF owns. BNSF engaged in an upgrade to an existing BNSF mainline track and construction of a second mainline track adjacent to and south of the existing mainline track for approximately 2.56 miles (the "Project"). BNSF also upgraded a mainline track turnout and constructed about 800 feet of additional track. All construction work occurred within the existing BNSF right-of-way and resulted in about 10 acres of ground disturbance.

In August 2018, Clark County officials contacted BNSF's counsel James Lynch about the Project, asserting Clark County's view that "a Columbia River Gorge National Scenic Area permit from Clark County was required" for the Project. Dkt. 64 at 13. BNSF responded that federal law preempted Clark County's Gorge Scenic Area regulations and, although it offered to work collaboratively to resolve any concerns with the project, it was not required to obtain a permit from Clark County. *Id.* at 25–26. The disagreement ultimately resulted in this declaratory judgment action. On June 5, 2019, BNSF filed a status report stating that the Project was now complete. Dkt. 86.

### III. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Preemption**

The ICCTA abolished the Interstate Commerce Commission, created the Surface Transportation Board ("STB"), and granted the Board jurisdiction over certain interstate rail functions and matters. *City of Auburn v. United States*, 154 F.3d 1025, 1028 n.3 (9th Cir. 1998). It substantially deregulated the railroad industry. *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1096 (9th Cir. 2009). Under § 10501(b), the STB has exclusive jurisdiction over repair work to interstate railway track. *Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1076 (9th Cir. 2016)

In this case, BNSF argues that the STB has exclusive jurisdiction over its Project to repair and construct a portion of its track. Defendants contend that two exceptions apply to the STB's exclusive jurisdiction. First, "[i]f an apparent conflict exists between ICCTA and a *federal* law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible." *Ass'n of Am. Railroads*, 622 F.3d at 1097. The problem with this argument is that the Clark County Code is not a federal law. Recognizing this, Defendants cite authority for the proposition that ICCTA will not preempt local laws that implement federal laws.

In *Boston & Me. Corp. & Town of Ayer, Mass.*, 5 S.T.B. 500, 2001 WL 458685 (S.T.B. 2001), the STB stated that "nothing in section 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes,

such as the Clean Air Act, the [Clean Water Act], and the [Safe Drinking Water Act]." 2001 WL 458685 at *5. Defendants fail to persuade the Court that the Gorge Act, as applied through the Clark County Code, is the type of nationwide environmental statute that is not preempted by the ICCTA. Instead, the Gorge Act is limited to a specific portion of the country and delegates almost all authority to the state and local representatives to manage and adopt ordinances. The Gorge Commission, which is composed of members appointed by the States, 16 U.S.C. § 544c(a)(1)(C), "shall not be considered an agency or instrumentality of the United States for the purpose of any Federal law," *id.* § 544c(a)(1)(A). Although the Secretary must provide guidelines for some land use ordinances within the designated area, *id.* § 544d(c)(5)(A), the Commission retains veto power over any objections by the Secretary to the Gorge Commission's overall management plan, *id.* § 544d(f). Under this statutory scheme, the Court rejects Defendants' argument that the STB would consider the Gorge Act a "Federal environmental statute[], such as the Clean Air Act, the [Clean Water Act], and the [Safe Drinking Water Act]." *Town of Ayer*, 2001 WL 458685 at *5. Therefore, the Clark County Code is not implementing Federal law in a way that would preclude preemption under § 10501(b).

Second, Defendants argue that the Clark County Code is not preempted because "ICCTA does not preempt state or local laws if they are laws of general applicability that do not unreasonably interfere with interstate commerce." *Ass'n of Am. Railroads*, 622 F.3d at 1097. "The ICCTA 'preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued

application of laws having a more remote or incidental effect on rail transportation. What matters is the degree to which the challenged regulation burdens rail transportation[.]" *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 760–61 (9th Cir. 2018) (quoting *Ass'n of Am. Railroads*, 622 F.3d at 1097–98). While a general land use regulation may seem incidental to rail operations, the Court agrees with BNSF that there is nothing "incidental" about a preclearance regulation imposed by a local county that interferes with BNSF constructing or repairing its track. Therefore, the Court concludes that the Clark County Code is preempted by § 10501(b).

**C.     Other Arguments**

Defendants present other arguments against summary judgment. First, Defendants argue that BNSF's "as-applied" challenge is inappropriate for summary judgment and must be delayed for a fully developed factual record. The Court disagrees because the statutes, county code, and facts are sufficiently developed to address preemption.

Second, Defendants argue that BNSF somehow conceded that it would have to obtain a permit from the County when it requested an environmental permit from the Washington Department of Ecology ("Ecology"). Defendants provide no authority for this proposition. At most, it seems Ecology could revoke BNSF's permit based on the alleged misrepresentation. Therefore, the Court rejects Defendants' additional arguments against preemption.

## IV. ORDER

Therefore, it is hereby **ORDERED** that BNSF's motion for summary judgment, Dkt. 62, is **GRANTED** and the County, the Gorge Commission, and Friends's cross-motions for summary judgment, Dkts. 70, 72, 75, are **DENIED**.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 10th day of February, 2020.

BENJAMIN H. SETTLE
United States District Judge